Katherine F. Parks, Esq.
Nevada Bar No. 6227
Thorndal Armstrong, PC
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
Tel:  (775) 786-2882
kfp@thorndal.com
Attorney for Defendants
CARSON CITY, JASON BUENO, SEAN PALAMAR, TYSON LEAGUE,
JASON WOODBURY, and KENNETH FURLONG

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DREW J. RIBAR,

        Plaintiff,

vs.

STATE OF NEVADA EX. REL. NEVADA
DEPARTMENT OF CORRECTIONS,
CARSON CITY AND ITS SHERIFFS
OFFICE, CARSON CITY DISTRICT
ATTORNEYS OFFICE, CARSON CITY
MANAGERS OFFICE, FERNANDEIS
FRAZAIER IN HIS OFFICIAL CAPACITY
AS WARDEN OF NORTHERN NEVADA
CORRECTIONAL, AARON RYDER IN HIS
OFFICIAL CAPACITY AS AN OFFICER OF
NEVADA DEPARTMENT OF
CORRECTIONS, ROBERT SMITH IN HIS
OFFICIAL CAPACITY AS AN OFFICER OF
NEVADA DEPARTMENT OF
CORRECTIONS, JASON BUENO IN HIS
OFFICIAL CAPACITY AS AN OFFICER OF
CARSON CITY SHERIFF, SEAN
PALAMAR RYDER IN HIS OFFICIAL
CAPACITY AS AN OFFICER OF CARSON
CITY SHERIFF, TYSON DARIN LEAGUE
RYDER IN HIS OFFICIAL CAPACITY AS
AN OFFICER OF CARSON CITY DISTRICT
ATTORNEY, JAMES DZURENDA
(DIRECTOR NEVADA DEPARTMENT OF
CORRECTIONS), JASON D. WOODBURY
(CARSON CITY DISTRICT ATTORNEY),
KENNETH T. FURLONG IN HIS
CAPACITY AS SHERIFF CARSON CITY,
NV, OFFICER/DEPUTY/J. DOE 1-99,

        Defendants.

Case No.       3:24-cv-00103-ART-CLB

**CARSON CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1    COME NOW Defendants CARSON CITY, JASON BUENO, SEAN PALAMAR,

2   TYSON LEAGUE, JASON WOODBURY, and KENNETH FURLONG, by and through their

3   attorneys, Thorndal Armstrong, PC, hereby move the Court for its order dismissing Plaintiff's

4   Complaint pursuant to FRCP 56, as there are no genuine issues of material fact and Defendants

5   are entitled to judgment in their favor as a matter of law.

6    This motion is made and based upon the memorandum of points and authorities filed

7   herewith, all evidence and declarations attached hereto (and manually filed with the Court), and

8   all pleadings and papers on file herein.

9    DATED this 9th day of October, 2024.

10                                      THORNDAL ARMSTRONG, PC

11

12                         By:   _/s/ Katherine Parks_
                                 KATHERINE F. PARKS, ESQ.
13                               Nevada Bar No. 6227
                                 6590 S. McCarran Blvd., Suite B
14                               Reno, Nevada 89509
                                 Attorney for Defendants
15                               CARSON CITY, JASON BUENO, SEAN
                                 PALAMAR, TYSON LEAGUE, JASON
16                               WOODBURY, and KENNETH FURLONG

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

1    Katherine F. Parks, Esq.
     Nevada Bar No. 6227
2    Thorndal Armstrong, PC
     6590 S. McCarran Blvd., Suite B
3    Reno, Nevada 89509
     Tel:  (775) 786-2882
4    kfp@thorndal.com
     Attorney for Defendants
5    CARSON CITY, JASON BUENO, SEAN PALAMAR, TYSON LEAGUE,
     JASON WOODBURY, and KENNETH FURLONG
6
                        UNITED STATES DISTRICT COURT
7
                             DISTRICT OF NEVADA
8

9    DREW J. RIBAR,

10              Plaintiff,
                                        Case No.        3:24-cv-00103-ART-CLB
11   vs.

12   STATE OF NEVADA EX. REL. NEVADA       **MEMORANDUM OF POINTS AND**
     DEPARTMENT OF CORRECTIONS,            **AUTHORITIES IN SUPPORT OF**
13   CARSON CITY AND ITS SHERIFFS          **CARSON CITY DEFENDANTS' MOTION**
     OFFICE, CARSON CITY DISTRICT          **FOR SUMMARY JUDGMENT**
14   ATTORNEYS OFFICE, CARSON CITY
     MANAGERS OFFICE, FERNANDEIS
15   FRAZAIER IN HIS OFFICIAL CAPACITY
     AS WARDEN OF NORTHERN NEVADA
16   CORRECTIONAL, AARON RYDER IN HIS
     OFFICIAL CAPACITY AS AN OFFICER OF
17   NEVADA DEPARTMENT OF
     CORRECTIONS, ROBERT SMITH IN HIS
18   OFFICIAL CAPACITY AS AN OFFICER OF
     NEVADA DEPARTMENT OF
19   CORRECTIONS, JASON BUENO IN HIS
     OFFICIAL CAPACITY AS AN OFFICER OF
20   CARSON CITY SHERIFF, SEAN
     PALAMAR RYDER IN HIS OFFICIAL
21   CAPACITY AS AN OFFICER OF CARSON
     CITY SHERIFF, TYSON DARIN LEAGUE
22   RYDER IN HIS OFFICIAL CAPACITY AS
     AN OFFICER OF CARSON CITY DISTRICT
23   ATTORNEY, JAMES DZURENDA
     (DIRECTOR NEVADA DEPARTMENT OF
24   CORRECTIONS), JASON D. WOODBURY
     (CARSON CITY DISTRICT ATTORNEY),
25   KENNETH T. FURLONG IN HIS
     CAPACITY AS SHERIFF CARSON CITY,
26   NV, OFFICER/DEPUTY/J. DOE 1-99,

27
                Defendants.
28

                                   - 3 -

# I

## __INTRODUCTION__

This lawsuit arises out of the arrest of Plaintiff Drew Ribar on August 30, 2022, outside of the Northern Nevada Correctional Center ("NNCC") located at 1721 Snyder Avenue, Carson City, Nevada, on charges of trespass, obstructing a public officer, and disturbing the peace. *See,* Exhibit 1, Declaration of Jason Bueno; *see also,* Exhibit A to Declaration of Jason Bueno, Carson City Sheriff's Office Incident Report. The entire events underlying Ribar's allegations in this case were videotaped, either by Ribar himself, on body worn camera video of Defendant Deputy Jason Bueno, or in video taken from Deputy Bueno's patrol vehicle. Submitted to the Court as Exhibit 2 is a copy of Deputy Bueno's body worn camera video from August 30, 2022, and submitted to the Court as Exhibit 3 is video from Deputy Bueno's patrol vehicle which documents the entire time Ribar was inside Deputy Bueno's vehicle. In addition, Ribar produced video in this case which he took of the events in question and this video is submitted to the Court as Exhibit 4 to Defendants' motion.[1]

The video taken by Plaintiff on August 30, 2022, documents Ribar's actions in parking his vehicle on Snyder Avenue, the road leading to the NNCC, and in videotaping Snyder Road and areas of the NNCC, including the prison itself and the fences surrounding the prison. As is discussed below, the Carson City Sheriff's Office ("CCSO") was dispatched to the prison at the request of sworn law enforcement officers employed by the State of Nevada Department of Corrections who informed Deputy Bueno and Deputy Sean Palamar that Ribar was trespassing on state property.

Ribar filed his Complaint in this case on January 29, 2024, against numerous parties (including a number of parties that are not suable entities) associated with the NDOC and Carson City. Many of the state statutes and constitutional amendments, both state and federal, referenced in the caption of Plaintiff's Complaint, and in a footnote that appears on every page, are simply inapplicable to the facts at issue. In terms of the recognizable claims brought by Plaintiff against the Carson City Defendants, Plaintiff alleges as follows:

---

[1] These exhibits have been manually filed with the Court in conjunction with the Defendants' Motion for Summary Judgment.

(1)  that Deputy Bueno violated the Fourth Amendment of the United States Constitution and Article 1, §18 of the Nevada Constitution when he allegedly "hot boxed" Plaintiff by placing him into the back of his patrol vehicle on a hot day;

(2)  that Deputy Bueno wrongfully arrested Plaintiff in violation of the Fourth Amendment of the United States Constitution and Article 1, §18 of the Nevada Constitution;

(3)  that Deputy Palamar unlawfully seized his vehicle in violation of the Fourth Amendment of the United States Constitution and Article 1, §18 of the Nevada Constitution when he had Plaintiff's vehicle towed from Snyder Avenue to a local tow yard;

(4)  that Defendant Tyson League maliciously prosecuted Plaintiff for crimes stemming from his arrest on August 30, 2022, in retaliation for Plaintiff's actions in (allegedly) exercising his First Amendment rights;

(5)  that unnamed persons associated with the CCSO blocked Plaintiff from posting a video of his arrest on a Facebook page associated with the CCSO in alleged violation of Plaintiff's First Amendment right to freedom of speech; and,

(6)  state tort claims for assault, battery, false imprisonment, and malicious prosecution.

By virtue of the fact that all of the events underlying Ribar's Complaint were videotaped, there are no genuine issues of material fact and the moving Defendants are entitled to judgment in their favor as a matter of law.

**II**

**UNCONTESTED FACTS**

On August 30, 2022, at 1:53 p.m., Deputy Bueno responded to the prison (NNCC) located at 1721 Snyder Ave in reference to a suspicious subject on prison property.  *See,* Exhibit 1, Declaration of Jason Bueno, ¶2.  Specifically, prison officials had advised CCSO Dispatch that a male subject was parked on prison property and was refusing to leave.  *Id.*  Upon arrival, Deputy Bueno met with Sgt. Robert Smith from the Nevada Department of Corrections who informed him that a male subject, later identified as Drew Ribar, parked on the prison entrance road and began filming restricted areas.  *Id.* at ¶4.  Sgt. Smith informed Ribar that the area in which he was walking and filming was restricted State property and that he was not authorized to

remain on the property or continue his activities. *Id.* Sgt. Smith also informed Ribar on how to obtain authorization to conduct activities on prison grounds, but Ribar refused to leave and began walking toward the main prison gates while filming the area, including fence lines, security measures, and private vehicles of staff parked in the prison's parking lot. *Id.* Due to the security risk posed to the property, staff and inmates, and because Ribar was uncooperative and ignored lawful orders to leave, Sgt. Smith initiated a lockdown of the prison entire facility and surrounding areas. *Id.* at ¶5. This included moving hundreds of inmates and staff to secure locations and verifying that everyone was accounted for and that the facility was secure. *Id.*

As Ribar approached the main gates and fence line, Lt. Aaron Ryer of NDOC also contacted him and told him multiple times to leave the property. *Id.* at ¶6. Ribar refused all orders to leave and continued filming the sensitive security areas. *Id.* Frazier Fernandeis, the warden of NNCC, was alerted to the situation and contacted Ribar in front of the administrative building of the prison. *Id.* at ¶7. Warden Fernandeis asked Ribar to identify himself and Ribar refused. *Id.* Warden Fernandeis then repeated orders that Ribar leave the property immediately and cease filming security measures on the property. *Id.* Ribar continued to refuse and continued disrupting the operations of the facility and property. *Id.* Deputy Bueno spoke with Warden Fernandeis and confirmed that Ribar was asked to leave multiple times and that he refused, which caused severe disruption of operations on the property. *Id.* at ¶8. Warden Fernandeis also informed Deputy Bueno that Ribar continued to film security measures and fence lines around the facility, posing a safety and security risk, despite prison officials' entreaties to him to stop. *Id.* Ribar was advised of the proper way to access the property officially to conduct his business, but he refused to listen or comply with lawful orders to leave the property. *Id.*

Warden Fernandeis requested that Deputy Bueno place Ribar in custody, at which time Deputy Bueno placed Ribar in handcuffs, ensured the proper fit, and secured Ribar in the rear passenger side of his patrol vehicle. *Id.* at ¶9. Ribar was given Miranda warnings and was transported to the Carson City Jail where he was booked for trespassing, obstructing a public officer, and disturbing the peace. *Id.*

As is clear from a review of Deputy Bueno's body worn camera video, the passenger side window of Deputy Bueno's patrol vehicle was rolled down after Ribar was placed inside.  *See,* Exhibit 2, body worn camera video.  Ribar was placed into the back of Deputy Bueno's patrol vehicle at 2:16 p.m.  *Id.; see also,* Exhibit 3, patrol vehicle video.  Ribar remained seated in the patrol vehicle until 2:30 p.m. while Deputy Bueno concluded his investigation on scene, after which Deputy Bueno got into the vehicle and transported Ribar to the Carson City Jail.  *See,* Exhibit 3.  Deputy Bueno arrived at the Carson City Jail at 2:42 p.m. and Ribar was removed from Deputy Bueno's vehicle at 2:43 p.m.  *Id.*

Deputy Bueno's vehicle was running and the air conditioning was operable during the entire time Ribar was inside the vehicle on August 30, 2022.  *See,* Exhibit 1, ¶12.  There was continuous air flow in the patrol vehicle and dedicated air vents in the back seat of the vehicle. *Id.*  The fact that the air conditioning in the patrol vehicle was on at the time in question can be seen at 2:24 p.m. in Deputy Bueno's body worn camera video, as the interior console is visible and the air conditioning system can be observed as being on "LO."  *See,* Exhibit 2.  In total, Plaintiff spent approximately 27 minutes inside Deputy Bueno's vehicle, including 14 minutes Plaintiff spent alone in the back of the vehicle and 13 minutes Plaintiff spent in the vehicle on the drive from the scene of Plaintiff's arrest to the Carson City Jail.  As is clearly evident on the available video, Plaintiff was subjected to *no force*, let alone excessive force within the meaning of the Fourth Amendment.

Deputy Palamar also responded to the scene of Ribar's arrest on August 30, 2022.  *See,* Exhibit 5, Declaration of Sean Palamar, ¶2.  Upon arrival at the NNCC, Deputy Palamar was advised by Sgt. Smith that the NNCC and Stewart Conservation Camp had been placed into lockdown due to the security risk created by Ribar on prison grounds.  *Id.* at ¶2.  After speaking with NDOC officers, Deputy Palamar called a tow truck to have Ribar's vehicle removed from Snyder Avenue where it had been parked.  *Id.* at ¶3.  The vehicle was removed at the request of the NDOC officers, as the NNCC considers it a safety and security risk to have vehicles parked on Snyder Avenue, the entrance road to the prison.  *Id.* at ¶4.  Ribar's vehicle was parked in a prohibited area, as vehicles are not permitted to be parked along Snyder Avenue.  *Id.*

- 7 -

1    Plaintiff was charged by the Carson City District Attorney's Office with one count of

2  trespass in violation of NRS 207.200 and one count of violating NRS 203.119 (commission of an

3  act in the area of a public building interfering with the conduct of activities).  *See,* Exhibit 6,

4  Amended Criminal Complaint.  Ribar pled no contest to trespass and, after Ribar satisfactorily

5  completed the terms of a deferred sentence, the charges against him were dismissed.  *See,*

6  Exhibit 7, Motion to Dismiss.

7                                                                **III**

8                                                    **LEGAL ANALYSIS**

9  **A.      STANDARD OF REVIEW**

10   Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is

11  always proper "if the pleadings, depositions, answers to interrogatories, and admissions on file,

12  together with the affidavits, if any, show that there are no genuine issues as to any material fact

13  and the moving party is entitled to a judgment as a matter of law." A party is entitled to summary

14  judgment where the documentary evidence produced by the parties permits only one conclusion.

15  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251, 106 S. Ct. 2505 (1986).

16   The party seeking summary judgment bears the initial burden of informing the Court of

17  the basis of its motion and identifying those portions of the pleadings, depositions, answers to

18  interrogatories, and admissions on file, together with the affidavits, if any, that it believes

19  demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

20  317, 323, 106 S. Ct. 2548 (1986). Where the moving party has met its initial burden with a

21  properly supported motion, the party opposing the motion "may not rest upon the mere

22  allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a

23  genuine issue for trial." *Anderson*, *supra.* at 248. Further, the opposing party cannot rest on mere

24  allegations of facts without "any significant probative evidence tending to support the

25  complaint." *Id.* at 249. If the evidence is merely colorable or is not significantly probative,

26  summary judgment may be granted. *Id.* at 249-50. There is no issue for trial unless there is

27  sufficient evidence favoring the nonmoving party for a jury to return a verdict in favor of that

28

party. *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S. Ct. 1575, 1592 (1968).

Plaintiffs' federal claims must be brought under 42 U.S.C. §1983 which creates no substantive rights but which provides a remedy for violation of rights protected by the United States Constitution or federal statutes by persons acting under color of state law. *See, Smith v. Barton,* 914 F.3d 1330, 1333 (9th Cir. 1990). To establish a violation of §1983, a plaintiff must demonstrate the following: (1) that the defendants have acted under color of state law and (2) that the defendants have deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *See, Jensen v. City of Oxnard,* 145 F.3d 1078, 1082 (9th Cir. 1998).

**B.    THE CARSON CITY SHERIFF'S OFFICE, THE CARSON CITY DISTRICT ATTORNEY'S OFFICE AND THE CARSON CITY MANAGER'S OFFICE ARE NOT SUABLE ENTITIES AND SHOULD BE DISMISSED.**

Plaintiff has named a number of non-suable departments of Carson City in his Complaint and those entities should be dismissed from the case. Specifically, Plaintiff includes the Carson City Sheriff's Office, the Carson City District Attorney's Office, and the Carson City Manager's Office as defendants. Departments of political subdivisions are not subject to suit under Nevada law. *See, Scheider v. Elko County Sheriff's Dep't.*, 17 F. Supp.2d 1162, 1164 (D. Nev. 1998)(a Nevada sheriff's department lacks the capacity to be sued under Nevada law and plaintiff's action against the Sheriff's Department was frivolous); *see also, Wayment v. Holmes,* 112 Nev. 232, 237-38, 912 P.2d 816 (Nev. 1996)(Washoe County District Attorney's Office, a county department and not a political subdivision, was not a suable entity). Accordingly, these departments of Carson City should be dismissed.

**C.    SHERIFF KEN FURLONG AND CARSON CITY DISTRICT ATTORNEY JASON WOODBURY ARE ENTITLED TO JUDGMENT IN THEIR FAVOR AS A MATTER OF LAW UNDER FRCP 56.**

As to Plaintiff's constitutional claims premised upon 42 U.S.C. §1983, as well as Plaintiff's claims premised upon identical provisions of the Nevada Constitution, Plaintiff has alleged no facts in his Complaint which suggest that either the Carson City Sheriff or the Carson City District Attorney were personally involved in any of the events described in the Complaint.

In order to succeed on a claim based upon the alleged violation of constitutional rights, Plaintiff must show that each individual defendant was personally involved in the alleged constitutional deprivation at issue. *See, Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1999). His failure to allege any such facts is fatal to his claims against Sheriff Furlong and Mr. Woodbury.

Further, and although not well articulated in Plaintiff's Complaint, to the extent Plaintiff's allegations against Mr. Woodbury are related to the criminal prosecution of Plaintiff arising out of the events in question, Mr. Woodbury would be entitled to dismissal of all claims brought against him based upon absolute prosecutorial immunity for the reasons articulated in Section F set forth below.

**D. DEPUTY JASON BUENO IS ENTITLED TO JUDGMENT IN HIS FAVOR OF ANY AND ALL CLAIMS PREMISED UPON THE ARREST OF PLAINTIFF ON AUGUST 30, 2022.**

Despite the extraneous references by Plaintiff to constitutional amendments and state criminal statutes that are inapplicable in this case, the primary issue with respect to Deputy Bueno is whether he violated Plaintiff's constitutional rights with respect to Plaintiff's arrest. Although not clearly articulated in the Complaint, Plaintiff's claim appears to be twofold. First, Plaintiff appears to allege that Deputy Bueno unlawfully arrested him in violation of the Fourth Amendment of the United States Constitution. Second, Plaintiff alleges that Deputy Bueno used excessive force in violation of the Fourth Amendment when he placed Plaintiff into the back of his patrol vehicle on a hot day. Plaintiff uses the term "hot box" in his Complaint and alleges that Deputy Bueno locked Plaintiff inside his patrol vehicle on a 95-degree day without turning on the air conditioning and with the windows of the vehicle rolled up. As is discussed below, Plaintiff's claim that he was "hot boxed" by Deputy Bueno on August 30, 2022, is completely undermined by the video of the incident at issue.

Before turning to the lack of merit of Plaintiff's Fourth Amendment claim against Deputy Bueno, Plaintiff's reference to inapplicable constitutional provisions bears discussion. In his Complaint, Plaintiff cites to the Fifth, Eighth and Fourteenth Amendments of the United States Constitution, as well as identical provisions in the Nevada Constitution, with reference to his arrest. The Fifth Amendment's Due Process protections are directed at the federal government

and is inapplicable to the States and state actors. *See, Bingue v. Prunchak,* 512 F.3d 1169, 1174 (9th Cir. 2008). The Eighth Amendment's prohibition against cruel and unusual punishment applies only after a conviction. *See, Graham v. Connor,* 490 U.S. 386, 393, fn. 6, 109 S. Ct. 1865 (1989). The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from the use of excessive force that amounts to punishment. However, this applies only after the seizure or arrest ends and the pretrial detention begins. *Graham, supra.* at 395, fn. 10; *see also, Bell v. Wolfish,* 441 U.S. 520, 535, 539 (1979). Further, Plaintiff's generic reference to the due process clause of the Fourteenth Amendment, and Nevada's counterpart at Article 1, §8, are equally inapplicable to the facts of this case. The United States Supreme Court has made clear that, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing" such claims. *See, County of Sacramento v. Lewis,* 523 U.S. 833, 842, 118 S. Ct. 1708 (1998) *citing, Albright v. Oliver,* 510 U.S. 266, 273, 114 S. Ct. 807 (1994). Here, the Fourth Amendment's prohibition against unlawful arrest provides an explicit textual source for the particular conduct at issue. As such, the Plaintiff's claims must be analyzed under the Fourth, not the Fourteenth Amendment, and due process rights are not at issue in this case. Where a claim of excessive force arises in the context of an investigatory stop, arrest or other seizure of a citizen, the claim is properly analyzed under the Fourth Amendment's objective reasonableness standard. *Graham, supra.* at 388. A claim for the alleged use of excessive force by an officer during transportation of an arrestee is properly analyzed under the Fourth Amendment. *See, Fontana v. Haskin,* 262 F.3d 871, 878 (9th Cir. 2001).

There is no evidence in this case to support Plaintiff's claim that he was somehow subjected to excessive force in violation of the Fourth Amendment during the short period of time he spent in the back of Deputy Bueno's patrol vehicle. The video submitted by the Defendants with the instant motion undermines all aspects of this claim. The body worn camera video of Deputy Bueno of the events in question squarely contradicts Plaintiff's claim in this regard. *See,* Exhibit 2. In fact, Deputy Bueno's body worn camera shows that the rear passenger

side window of his patrol vehicle was open for the majority of the time after Plaintiff was placed in the vehicle.  *Id.*  Plaintiff can clearly be heard talking to the law enforcement officers on scene through the open window while seated in the vehicle.  *Id.*  The video taken from inside Deputy Bueno's vehicle documents the entire time Plaintiff was seated in the vehicle and at no time does Plaintiff appear to be in distress or even uncomfortable.  *See,* Exhibit 3.  Further, the vehicle was running and the air conditioning was on during the entire period of time that Plaintiff was seated in the rear of the vehicle.  *See,* Exhibit 1, ¶12; *see also,* Exhibit 2.  Deputy Bueno's body camera video documents the fact that the air conditioning was running.  *See,* Exhibit 2.  Deputy Bueno's vehicle was equipped with vents which provided air to the back seat and there was continuous air flow at all times while Plaintiff was seated in the vehicle.  *See,* Exhibit 1, ¶12.  As is demonstrated by the video taken from inside of Deputy Bueno's vehicle, Ribar was alone is the rear passenger seat for a total of 14 minutes and was inside of the vehicle for a total of 27 minutes before he was removed from the vehicle at the Carson City Jail.  The undisputed facts as contained in the video submitted by the Defendants compels the conclusion that there was no Fourth Amendment violation with respect to the placement of Ribar in the back seat of Deputy Bueno's patrol vehicle; i.e. there is no factual support for Plaintiff's claim that he was "hot boxed" on August 30, 2022.

Although unnecessary exposure to heat may constitute a constitutional violation, being briefly detained in uncomfortable conditions such as a hot patrol car does not amount to a constitutional violation.  *See, Arias v. Amador,* 61 F. Supp.3d 960, 976 (E.D. Cal. 2014).  In an unpublished decision, a panel of the Ninth Circuit Court of Appeals has suggested that post-arrest detention in a hot, unventilated police vehicle can constitute excessive force under the Fourth Amendment in certain circumstances.  *See, Kassab v. San Diego Police Dep't.*, 453 F. App'x 747, 748 (9th Cir. 2011).  In that case, the plaintiff alleged that he had been detained in a police car for more than four hours with the windows rolled up, no air conditioning, and an interior temperature of 115 degrees, and that, as a result, he suffered from heat stroke, had difficulty breathing and almost passed out several times.  *Id.*  No such facts exist in this case, as the evidence demonstrates that Plaintiff was inside Deputy Bueno's vehicle for approximately 27

minutes, that the rear passenger side window was rolled down for much of that time, and that the vehicle was running and the air conditioning was operable.  *See,* Exhibit 1, ¶12; *see also,* Exhibit 2 and Exhibit 3.  There is also no evidence whatsoever to suggest that Plaintiff suffered any injury of the type described by the Ninth Circuit in *Kassab.*  To the contrary, Plaintiff does not even allege any such injury and states in his Complaint only that he "dripped in sweat" and that he had "stinging pain" in his eyes and trouble with "focus[ing]" his vision due to sweat.  *See,* ECF 1-1, p. 7, lines 3-6.  The facts in the case at bar at much more akin to those circumstances in which the Courts have found no constitutional violation as related to confinement of an individual in a patrol vehicle.  *See, Arias, supra.* at 697 (post-arrest detention for approximately 15 minutes in "very hot" police car in which the window was rolled down about 4 inches was not a violation of the Fourth Amendment); *Estmon v. City of New York,* 371 S. Supp.2d 202, 214 (S.D.N.Y. 2005)(finding no Fourth Amendment violation where the plaintiff was held in a hot police car for ten minutes without injury); *Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir. 2001)(finding no Fourth Amendment violation where the plaintiff was left in an unventilated vehicle in the sun for approximately 30 minutes); *Kanvick v. City of Reno,* 2008 WL 873085 (D. Nev. 2008)(no Fourth Amendment violation where the plaintiff was placed in allegedly hot patrol vehicle for approximately 17 minutes and offered no evidence of any alleged injuries).[2]

In addition to the fact that there is no evidence to support a constitutional violation from a substantive standpoint, Deputy Bueno is also entitled to summary judgment of this claim under the doctrine of qualified immunity.  A government official is entitled to qualified immunity from a claim of damages unless the plaintiff raises a genuine issue of material fact showing (1) a violation of a constitutional right and (2) that the right was clearly established at the time of the alleged misconduct.  *See, Evans v. Skolnik*, 997 F.3d 1060, 1064 (9th Cir. 2021); citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808 (2009).  The elements of qualified immunity may be addressed in either order.  *Pearson, supra.* at 223.  A government official violates clearly established law when, at the time of the challenged conduct, the contours of the right are sufficiently clear that every reasonable official would have understood that what he or she was

---

[2] *See,* Exhibit 8, *Kanvick v. City of Reno,* Case No. 3:06-cv-00058-RAM.

doing violates that right.  *Evans, supra.* at 1066.  "Although the Supreme Court 'does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'"  *Id; citing Kisela v. Hughes,* 584 U.S. 100, 138 S. Ct. 1148, 1152 (2018).  "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law."  *District of Columbia v. Wesby,* 583 U.S. 48, 138 S. Ct. 577, 589 (2018).

Qualified immunity operates to give government officials breathing room to make reasonable but mistaken judgments.  *Id.* at 1067.  The protection of qualified immunity applies regardless of whether the public official's error is a mistake of law, a mistake of fact, or a mistake based upon mixed questions of law or fact.  *Pearson, supra.* at 231.  Qualified immunity protects officers from the "sometimes hazy border between excessive and acceptable force."  *Carswell v. Borough of Homestead*, 381 F.3d 235, 243 (3rd Cir. 2004)(cert. denied, 546 U.S. 899 (2005).  In excessive force cases, qualified immunity can apply in the event the mistaken belief was reasonable.  *Id.*  If the law did not place the government official on notice that his or her actions violated a clearly established constitutional or statutory right, the government official is entitled to qualified immunity.  *Pearson, supra.* at 243.

Whether the law was clearly established and whether an officer could have a reasonable, albeit mistaken belief that his conduct was lawful, are questions of law for the Court to decide on summary judgment when the pertinent material facts are undisputed.  *See, J.P. ex rel. Balderas v. City of Porterville,* 801 F. Supp.2d 965, 980 (E.D. Cal. 2011). Qualified immunity is an immunity from suit, rather than a mere defense to liability, and it is effectively lost if a case is erroneously permitted to go to trial.  *Scott v. Harris,* 550 U.S. 372, 376, 127 S. Ct. 1769 (2007).

In terms of the qualified immunity analysis, it is evident from the undisputed facts that Deputy Bueno did not commit a constitutional violation with respect to placing Ribar in the back of his patrol car.  Further, it simply cannot be said that it was clearly established law in the Ninth Circuit (or elsewhere) that Deputy Bueno's actions in placing Plaintiff in the back of his patrol vehicle for 27 minutes while he completed his investigation and drove Plaintiff to the Carson City Jail could conceivably rise to the level of a Fourth Amendment violation, as there is no legal

precedent which would have placed Deputy Bueno on notice that his actions were in any way unlawful or in violation of the Fourth Amendment.  Accordingly, Deputy Bueno is immune from suit based on the application of qualified immunity.

With respect to Plaintiff's unlawful arrest claim, under the Fourth Amendment, a warrantless arrest requires probable cause.  *See, U.S. v. Lopez,* 482 F.3d 1067, 1072 (9th Cir. 2007).  A law enforcement officer is privileged to make an arrest where probable cause exists. Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a prudent person of reasonable caution in the belief that an offense has been committed by the person to be arrested.  *See, Gasho v. United States,* 39 F.3d 1420, 1427 (9th Cir. 1994); *see also, Beck v. Ohio,* 379 U.S. 89, 91, 85 S. Ct. 223 (1964). "Probable cause is an objective standard" and an arresting officer's subjective intention is immaterial to the analysis of reasonableness.  *Lopez, supra.* at 1072.  Probable cause to arrest does not require awareness of a particular crime, only that some crime may have been committed.  Probable cause to arrest requires only a probability or substantial chance of criminal activity, not an actual showing of such.  *See, Illinois v. Gates,* 462 U.S. 213, 243, fn 13, 103 S. Ct. 2317 (1983).  Even where a law enforcement officer is not aware of all of the underlying facts that provided probable cause for arrest, he or she may nonetheless act reasonably in relying on information received by other law enforcement officials.  *See, Kayo v. Mertz,* 531 F. Supp.3d 774, 795 (S.D. N.Y. 2021); *see also, United States v. Colon,* 250 F.3d 130, 135 (2nd Cir. 2001). In a §1983 false arrest case, the burden of establishing the absence of probable cause rests on the plaintiff.  *Kayo, supra.* at 789.

In this case, ample probable cause existed for the actions of Deputy Bueno in taking Plaintiff into custody on August 30, 2022.  Plaintiff was arrested on several charges, including trespassing in violation of NRS 207.200, which provides that, a person who . . . willfully goes or remains upon any land or in any building after having been warned during the previous 24 months by the owner or occupant thereof not to trespass is guilty of a misdemeanor.  *See,* NRS 207.200(1)(b).  As is apparent from even a cursory review of the video taken by Plaintiff himself of the events at issue, Plaintiff was advised numerous times by no less than three law

enforcement officers with the Department of Corrections that he was trespassing in an area he was not permitted to be.  *See,* Exhibit 4.  He was informed as to the proper procedure he needed to follow if he wanted to access areas at or around the prison and he disregarded the admonitions of NDOC officers in this regard.  *Id.*  While Plaintiff may have had the belief, however misguided, that he had a First Amendment right to be on prison grounds, and to videotape a correctional facility operated by the State, such a belief has no bearing on whether probable cause existed for Plaintiff's arrest.  Deputy Bueno was informed by Warden Fernandeis, a sworn law enforcement officer of the State and the officer in charge of the NNCC, that Plaintiff had committed the offense of trespass in that he had been asked multiple times to leave the property and had refused.  *See,* Exhibit 2, body worn camera video.  Clearly, Deputy Bueno had more than sufficient knowledge and reasonably trustworthy information to have warranted the conclusion that probable cause existed to arrest Plaintiff for trespass.

Plaintiff was also arrested for a violation of NRS 203.119, which provides that a person "shall not commit any act in a public building or on the public grounds surrounding the building which interferes with the peaceful conduct of activities normally carried on in the building or on the grounds."  *See,* NRS 203.119(1).  The statutes further provides that a person who refuses to leave any public building or grounds under such circumstances upon request by the proper official is guilty of a misdemeanor.  *See,* NRS 203.119(2).  "Public building" under the statute includes any building owned by the State of Nevada and used for any public purpose.  *See,* NRS 203.119(4)(b)(2).

Deputy Bueno was advised by Mr. Fernandeis, the warden of the NNCC, that he had instructed Plaintiff to leave the prison grounds and that Plaintiff refused.  *See,* Exhibit 1, Declaration of Jason Bueno, ¶8; *see also,* Exhibit 2, body worn camera video.  Deputy Bueno was also informed that, as a result of Plaintiff's actions in remaining on prison grounds and in filming security measures and fence lines around the facility, NNCC had to initiate a lockdown of the entire facility and surrounding areas.  *Id.* at ¶5.  As such, Deputy Bueno had ample probable cause to arrest Plaintiff for violating NRS 203.119.  Because probable cause existed for

Plaintiff's arrest,  Ribar's wrongful arrest claim fails as a matter of law and summary judgment must be entered in Deputy Bueno's favor as to same.

Even assuming that Deputy Bueno did not possess sufficient probable cause for the arrest of Plaintiff (an assumption that is clearly belied by the undisputed facts of the case), Deputy Bueno is also entitled to judgment in his favor as a matter of law pursuant to the doctrine of qualified immunity.

Considering the undisputed facts in this case, it simply would not have been clear to a reasonable officer on scene that the arrest of Plaintiff on August 30, 2022, could conceivably constitute a violation of Plaintiff's Fourth Amendment rights.  Deputy Bueno was relying upon facts provided to him by no less than three sworn officers of NDOC that Plaintiff had been instructed to leave the property and had refused.  Plaintiff was, in fact, still on the property (and in front of the prison) at the time Deputy Bueno arrived on scene.  An officer who participates in an arrest of an individual is immune from suit in his or her individual capacity if it was objectively reasonable for him to rely on a fellow officer's report indicating the existence of probable cause.  *See, Kayo, supra.* at 795.  Further, the law was not, and is not, clearly established that an arrest of a suspect under similar circumstances would have constituted a violation of the Fourth Amendment.  To constitute clearly established law, the particular rule at issue "must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Peck v. Montoya,* 51 F.4th 877, 887 (9th Cir. 2022). The analysis of this prong of the qualified immunity defense requires the Court to identify a case where an officer, acting under similar circumstances, was held to have violated the Fourth Amendment.  *See, Wesby, supra.* at 63.  In this case, the law was not (and is not) clearly established in terms of prior precedent so as to have put Deputy Bueno on notice that his actions in arresting Plaintiff for the offenses described above would have, or was, a violation of the Fourth Amendment.  Thus, Deputy Bueno is entitled to judgment in his favor on qualified immunity grounds, as well.

To the extent Plaintiff claims that Deputy Bueno's actions in taking him into custody was done in retaliation for Plaintiff having exercised First Amendment rights, "[a]s a general matter,

the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech.  If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to protect the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Id.;* citing *Crawford-El v. Britton,* 523 U.S. 574, 593, 118 S. Ct. 1584 (1998).  As articulated by the United States Supreme Court, to prevail on such a claim, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Id.;* citing *Hartman v. Moore,* 547 U.S. 250, 256, 126 S. Ct. 1695 (1998).  As further stated by the Supreme Court, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must *cause* the injury.  Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett,* 587 U.S. 391, 398-399, 139 S. Ct. 1715 (2019).

First and foremost, the United States Supreme Court has made clear that the existence of probable cause for arrest is fatal to a claim premised on First Amendment retaliation.  *Nieves, supra.* at 402 (a plaintiff pressing a First Amendment retaliatory arrest claim must plead and prove the absence of probable cause for the arrest).  Because Deputy Bueno had probable cause to arrest Ribar on August 30, 2022, and to the extent Plaintiff alleges that his arrest was made in retaliation for his exercise of rights protected by the First Amendment, Plaintiff's claim fails and summary judgment is warranted.

Even if the existence of probable cause did not undermine Plaintiff's wrongful arrest claim in this regard, there is absolutely no evidence to prove that Plaintiff's alleged speech (his claim that he had a First Amendment right to access or film activities at the NNCC) played any part in Deputy Bueno's actions in taking Plaintiff into custody.  Deputy Bueno was dispatched to the NNCC to respond to the State's call for assistance with a trespass incident.  Deputy Bueno had no information as to the reasons why Plaintiff was present on prison property or why he was filming areas of the prison, including security measures and prison fence line.  He was simply responding to a property owner's request, here the State, to remove a person from property who

was trespassing and causing the interruption of operations at the prison.  Plaintiff simply cannot

demonstrate a causal connection between Plaintiff's arrest and the activities in which he was

engaged prior to Deputy Bueno's arrival on scene.  As such, summary judgment must be entered

in favor of Deputy Bueno on any retaliatory arrest claim premised upon the First Amendment.

**E.**   **DEPUTY SEAN PALAMAR IS ENTITLED TO JUDGMENT IN HIS FAVOR OF ANY CLAIM PREMISED UPON HIS ACTIONS IN HAVING PLAINTIFF'S VEHICLE TOWED FROM SNYDER AVENUE.**

As discussed herein, Deputy Sean Palamar's involvement in the events of August 20,

2022, was primarily limited to his actions in calling a tow truck to have Plaintiff's vehicle

removed from Snyder Avenue, the road leading to the NNCC.  To the extent Plaintiff claims that

Deputy Palamar's actions in having his vehicle towed to a local tow yard constituted an unlawful

seizure in violation of the Fourth Amendment, said claim should be dismissed and judgment

entered in favor of Deputy Palamar as a matter of law.[3]

The Fourth Amendment protects against unreasonable interferences in property interests.

*Miranda v. City of Cornelius,* 429 F.3d 858, 862 (9th Cir. 2005).  A seizure occurs if there is

some meaningful interference with an individual's possessory interests in that property.  *Id.*  A

seizure conducted without a warrant is per se unreasonable subject, however, to several

established exceptions.  *Id.*  In their "community caretaking" function, police officers may

impound vehicles that jeopardize public safety.  *Id.* at 863.  In assessing the seizure of a vehicle

under such circumstances, the Court must determine whether the actions of the officer were

reasonable under the circumstances.  *Id.* at 864.

Here, Deputy Palamar's actions in calling a tow company to effect the removal of

Plaintiff's vehicle from Snyder Avenue was in no way, shape or form unreasonable from a

Fourth Amendment standpoint.  Deputy Palamar had the vehicle towed to a local tow yard

(operated by Cal-Neva Transport & Tow) at the request of the NDOC.  Parking along Snyder

Avenue, the road that accesses a medium security prison and prison grounds, is not permitted

---

[3]The Carson City Sheriff's Office did not impound Plaintiff's vehicle or otherwise take possession of it.  It was towed from Snyder Road and taken to a local tow yard.

1  and constitutes a safety and security risk.[4]  *See,* Exhibit 5, Declaration of Sean Palamar, ¶3.  As

2  such, Deputy Palamar's actions in having Plaintiff's vehicle towed from state property was not

3  an unreasonable or unconstitutional seizure of Plaintiff's property within the meaning of the

4  Fourth Amendment and he is entitled to summary judgment of this claim.

5         Although unclear from the Plaintiff's Complaint, to the extent Plaintiff means to suggest

6  that Deputy Palamar's actions were in any way motivated by alleged First Amendment activity

7  involving Plaintiff, there is no evidence whatsoever to demonstrate the causal connection

8  required for such a claim.  *See, Nieves, supra.* at 398-399.

9         In addition, Deputy Palamar is entitled to judgment in his favor as a matter of law on

10  qualified immunity grounds.  There is no legal authority which would have made it clear to a

11  reasonable officer on scene that the actions of towing Plaintiff's vehicle from a no-parking zone

12  on a road leading to a state prison, in light of the security and safety concerns underlying this

13  issue, was in violation of the Fourth Amendment.  As such, Deputy Palamar's actions did not

14  violate a clearly established right and Deputy Palamar is shielded from suit by qualified

15  immunity.

16  **F.**  **PLAINTIFF'S MALICIOUS PROSECUTION CLAIM MUST BE DISMSISED**
   **AND JUDGMENT ENTERED IN THE DEFENDANTS' FAVOR AS A MATTER**
17  **OF LAW.**

18         As was discussed above, a criminal action was filed against Ribar by the Carson City

19  District Attorney's Office as a result of Plaintiff's actions on August 30, 2022.  *See,* Exhibit 6,

20  Amended Criminal Complaint.  Following plea negotiations between the Carson City District

21  Attorney's Office and Plaintiff's criminal attorney, Richard Salvatore, Plaintiff pled no contest to

22  trespassing and the criminal case was dismissed after Plaintiff completed the conditions of his

23  deferred sentence.  *See,* Exhibit 7, Motion to Dismiss, p. 2.  Plaintiff claims in his Complaint that

24  members of the Carson City District Attorney's Office and, specifically, District Attorney Jason

25  Woodbury and Deputy District Attorney Tyson League, lacked probable cause to pursue the

26  criminal case in question.

27

28  [4]*See,* NNCC Facility Information page located at doc.nv.gov/Inmates/Visiting/NNCC_Visiting/
   which notes that parking along either side of Snyder Avenue is prohibited.

1      In order to set forth a prima facie claim of malicious prosecution, a successful plaintiff

2  must show, in part, that a defendant instigated a criminal proceeding with improper purpose and

3  without probable cause.  *See, McDonough v. Smith,* 588 U.S. 109, 116, 139 S. Ct. 2149 (2019).

4  With respect to this claim, Ribar must show that Mr. League prosecuted him with malice and

5  without probable cause and that he did so for the purpose of denying Ribar of a specific

6  constitutional right.  *See, Womack v. County of Amador,* 551 F. Supp.2d 1017, 1031 (E.D. Cal.

7  2008).  A malicious prosecution claim under §1983 is based on state law elements.  *See ,Usher v.*

8  *City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987).  Under Nevada law, the elements of a

9  malicious prosecution claim include: (1) that the defendant initiated, procured the institution of,

10  or actively participated in the continuation of a criminal proceeding against the plaintiff; (2) the

11  defendant lacked probable cause to commence that proceeding; (3) the defendant acted with

12  malice; (4) the prior proceeding was terminated; and (5) plaintiff suffered damages.  *See,*

13  *LaMantia v. Redisi,* 118 Nev. 27, 30, 38 P.3d 877 (Nev. 2002).  Want of probable cause is

14  judged by an objective standard under which the Court will determine whether, on the basis of

15  the facts known by the attorney, a reasonable attorney would have considered the prior action

16  legally tenable.  *See, Jordan v. Bailey,* 113 Nev. 1038, 1037-1038, 944 P.2d 828 (Nev. 1997).

17      Plaintiff's malicious prosecution claim against Mr. League fails as a matter of law based

18  upon the existence of probable cause for the initiation of the charges brought against him.  The

19  video taken by Plaintiff himself on August 30, 2022, clearly shows that Plaintiff was confronted

20  by officers with NDOC and was advised to leave prison property.  Evidence obtained directly

21  from Warden Fernandeis, a sworn law enforcement officer, provided more than ample probable

22  cause that Plaintiff had trespassed on prison property on August 30, 2022, and that Plaintiff's

23  actions in this regard resulted in a lockdown of the prison and prison grounds.  *See,* Exhibit 1,

24  ¶2-9; *see also,* Exhibit 2, body worn camera video.  The video recorded by Plaintiff of the events

25  in question also clearly shows Plaintiff violating NRS 203.119.  There is no question that

26  Plaintiff was instructed by the warden of NNCC to leave the prison property, a "public building"

27  within the meaning of the statute, and that Plaintiff's actions in being on the prison grounds and

28  filming security measures and fence lines resulted in interference with the peaceful conduct of

the activities at the prison, in that the entire facility was placed on lockdown as a result of Plaintiff's actions.  *See,* Exhibit 1, ¶5; *see also,* Exhibit 2.  Based upon these facts, Plaintiff cannot, as a matter of law, demonstrate that criminal proceedings were instituted against him without probable cause and his malicious prosecution claim fails.

To the extent Plaintiff attempts to allege that Mr. League instituted criminal proceedings against him in retaliation for Plaintiff having (allegedly) engaged in First Amendment protected activity, the United States Supreme Court has made clear that the existence of probable cause is fatal to any such claim.  *See, Hartman v. Moore,* 547 U.S. 250, 265-266, 126 S. Ct. 1695 (2006)(a plaintiff must plead and prove the absence of probable cause for the underlying criminal charge in a retaliatory prosecution case).

Further, Mr. League is entitled to judgment in his favor as a matter of law under the doctrine of absolute prosecutorial immunity.  Official immunity is an immunity from suit, not merely a defense to liability.  *See, Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S. Ct. 2806 (1995).  Acts undertaken by a prosecutor in preparation for the initiation of judicial proceedings or for trial, including the preparation of charging documents, i.e. those which occur in the course of his or her role as an advocate for the state, are entitled to the protections of absolute immunity. *See, Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 112 S. Ct. 2606 (1993).  Where a prosecutor functions as an administrator, rather than an officer of the court, he or she will be entitled to assert only qualified immunity.  *Id.*

Plaintiff does not even allege in his Complaint that either Mr. League, nor anyone else at the District Attorney's Office, was functioning outside of his role as an advocate for the State at the time of the filing of criminal charges against him nor does any such evidence exist. Plaintiff's malicious prosecution claim is premised upon the actions of Mr. League in "prosecuting the case" against him, including by filing an amended complaint and by engaging in plea negotiations with his criminal attorney.  *See,* ECF 1-1, p. 8 ¶9.  Mr. League is entitled to absolute immunity from suit for his actions in preparing the criminal complaint and prosecuting

1   the State's criminal case against Plaintiff  and judgment must be entered in his favor as a matter

2   of law.[5]

3   **G.      PLAINTIFF'S FIRST AMENDMENT CLAIM PREMISED UPON HIS ALLEGED
            INABILITY TO POST A VIDEO OF HIS ARREST ON THE CARSON CITY

4           SHERIFF'S OFFICE FACEBOOK PAGE MUST BE DISMISSED AND
            JUDGMENT ENTERED IN FAVOR OF THE DEFENDANTS AS A MATTER OF

5           LAW.**

6           To the extent Plaintiff claims that his First Amendment right to freedom of speech was

7   violated by the alleged refusal of unnamed persons with Carson City to have allowed Plaintiff to

8   post a video of his arrest on the Sheriff's Office's Facebook page, this claim must be dismissed

9   and judgment entered in Defendants' favor as a matter of law.

10          Plaintiff has named no individual defendants who were allegedly involved in the conduct

11  in question.  To the extent this claim is pled against Carson City, a government entity may not be

12  held liable under ¶1983 unless a policy, practice, or custom of the entity can be shown to be a

13  moving force behind the violation of a plaintiff's constitutional rights.  *See, Monell v. Dep't of*

14  *Soc. Servs.,* 436 U.S. 658, 694, 98 S. Ct. 2018 (1978).  In order to establish liability for

15  government entities under ¶1983, a plaintiff must prove (1) that the plaintiff possessed a

16  constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3)

17  that the policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4)

18  that the policy is the moving force behind the constitutional violation.  *See, Dougherty v. City of*

19  *Covina,* 654 F.3d 892, 900 (9th Cir. 2011).  Proof of a single instance of unconstitutional activity

20  is not sufficient to impose civil rights liability on a government entity unless proof of the incident

21  includes proof that it was caused by an existing, unconstitutional municipal policy which can be

22  attributed to a final policy-making official.  An isolated or sporadic incident cannot form the

23  basis of *Monell* liability for an improper custom or practice.  *See, Trevino v. Gates,* 99 F.3d 911,

24  918 (9th Cir. 1996).

25

26  _____

27  [5]There is no evidence that Carson City District Attorney Jason Woodbury was personally
    involved in the prosecution of Plaintiff's criminal case and, absent individual participation in the
    alleged wrongful conduct, he is entitled to dismissal from this case as a matter of law.  *See,*

28  *Taylor, supra.* at 1045.  Even if he were to have been involved, Mr. Woodbury would be
    protected by the doctrine of absolute immunity to the same extent as is Mr. League.

1   Plaintiff has failed to offer any evidence in this case that his First Amendment rights were

2   violated by virtue of the fact that he was allegedly prevented from posting a video of his arrest

3   (in an open criminal case) on any Facebook page operated by the City.  There is no evidence to

4   support any claim that an unlawful custom or policy in place in the City was the moving force

5   behind a violation of Plaintiff's First Amendment rights amounting to deliberate indifference on

6   the part of the City.  Even assuming Plaintiff was prevented from posting a video of his arrest on

7   Facebook, such would amount to an isolated incident that simply cannot form the basis of *Monell*

8   liability against the City in this case.  Accordingly,  Plaintiff's First Amendment claim premised

9   upon his alleged efforts to post a video of his arrest on Facebook must be dismissed and

10  judgment entered in favor of the Defendants as a matter of law.

11  **H.**   **PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED AND**

12        **JUDGMENT ENTERED IN FAVOR OF THE DEFENDANTS AS A MATTER OF LAW.**

13  Plaintiff's Complaint includes a myriad of state law claims, including claims based on the

14  Nevada Constitution and common law, all of which should be dismissed on summary judgment.

15        **(i)**   **False Imprisonment**

16  With respect to Plaintiff's state law claim for false imprisonment, "'[t]o establish false

17  imprisonment of which false arrest is an integral part, it is  . . . necessary to prove that the person

18  be restrained of his liberty under the probable imminence of force without any legal cause or

19  justification.'"  *Hernandez v. City of Reno,* 97 Nev. 429, 433, 634 P.2d 668 (Nev. 1981).  The

20  existence of probable cause for arrest undermines a state tort claim for false imprisonment.  *See,*

21  *Marschall v. City of Carson,* 86 Nev. 110, 112, 464 P.2d 494 (Nev. 1970).  The Nevada Supreme

22  Court examines the issue of probable cause for arrest in the identical manner as do the Federal

23  courts when addressing the Fourth Amendment.  *Id.*  Here, the existence of probable cause for

24  Plaintiff's arrest is fatal to his state tort claim for false imprisonment and, as such, this claim

25  should be dismissed and judgment entered in favor of the Defendants as a matter of law.

26  In addition, this claim is subject to summary dismissal based upon the discretionary act

27  immunity set forth at NRS 41.032(2).  Nevada has waived its general state immunity under NRS

28  41.031. The state's waiver of immunity is not, however, absolute and the state has retained a

- 24 -

discretionary function form of immunity for officials exercising policy-related or discretionary acts.  *See,* NRS 41.032(2); *see also, Napouk v. Las Vegas Metro. Police Dep't.*, 669 F. Supp.3d 1031, 1046 (D. Nev. 2023).  NRS 41.032(2) provides for immunity to both political subdivisions and its officers and employees, "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused."  Public entities are immune from suit for discretionary functions but may be held liable for operational functions.  *See, Martinez v. Maruszczak,* 123 Nev. 433, 168 P.3d 720 (Nev. 2007).  "Whether to detain or arrest a suspect and how to do so are discretionary functions of the police department." *Napouk, supra.* at 1046; citing *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868 (1968).  "A police officer's decision to arrest and detain is a discretionary act generally covered by NRS 41.032." *Scafidi v. Las Vegas Metro. Police Dep't.*, 966 F.3d 960, 965 (D. Nev. 2020).  "It is only when officers act in bad faith or in disregard for a citizen's rights that they lose discretionary-function immunity." *Napouk, supra.* at 1047.  "Bad faith" for purposes of the analysis of Nevada's discretionary-act immunity, "involves an implemented attitude that completely transcends the circumference of authority granted the individual or entity." *Falline v. GNLV Corp.*, 107 Nev. 1004, 1009, fn. 3, 823 P.2d 888 (Nev. 1991).

Here, Deputy Bueno's decision to arrest Ribar on August 30, 2022, was a discretionary act for which he is immune under NRS 41.032(2).  There is no evidence in this case that Deputy Bueno, who was simply responding to a call from officials with the Department of Corrections that an individual was trespassing on prison grounds, acted in bad faith so as to lose the protections of discretionary act immunity.  As such, NRS 41.032(2) provides additional grounds for dismissal of Plaintiff's false imprisonment claim on summary judgment.

### (ii)     Assault and Battery

Under Nevada law, a battery is defined as a willful and unlawful use of force or violence upon the person of another.  *See,* NRS 200.481.  An assault is defined as either (1) unlawfully attempting to use physical force against another person or (2) intentionally placing another

person in reasonable apprehension of immediate bodily harm.  *See,* NRS 200.471(1)(a)(1)-(2).

Law enforcement officers are privileged to use that amount of force which reasonably appears

necessary and are liable for assault and battery to the extent they use more force than is

reasonably necessary.  *See, Ramirez v. City of Reno,* 925 F. Supp. 681, 691 (D. Nev. 1996).  As

such, the standard to be used to analyze such claims under Nevada law is the same as that

applied to Fourth Amendment claims premised upon 42 U.S.C. §1983 and Nevada courts will

look to federal precedent.  *Id.* at 689.

As discussed in Section D, there is no evidence whatsoever that Plaintiff's arrest was

accompanied by *any* use of force, let alone more force than was reasonably necessary under the

circumstances.  Nor is there any evidence that Deputy Bueno threatened Plaintiff with bodily

injury.  Plaintiff's claims for assault and battery are subject to dismissal on summary judgment

based upon the same grounds as is Plaintiff's Fourth Amendment wrongful arrest claim and

Defendants are entitled to judgment in their favor as a matter of law with respect to same.

### (iii)    Malicious Prosecution

As noted above, under Nevada law, the elements of a malicious prosecution claim

include: (1) that the defendant initiated, procured the institution of, or actively participated in the

continuation of a criminal proceeding against the plaintiff; (2) the defendant lacked probable

cause to commence that proceeding; (3) the defendant acted with malice; (4) the prior proceeding

was terminated; and (5) plaintiff suffered damages.  *See, LaMantia, supra.* at 30.  Want of

probable cause is judged by an objective standard under which the Court will determine whether,

on the basis of the facts known by the attorney, a reasonable attorney would have considered the

prior action legally tenable.  *See, Jordan, supra.* at 1037-1038 .  To the extent Plaintiff's

Complaint can be read as including a state tort claim for malicious prosecution, the existence of

probable cause for the initiation of the criminal charges against Plaintiff by the Carson City

District Attorney's Office is dispositive of this claim and the Defendants are entitled to judgment

in their favor as a matter of law.  Further, Mr. League also has absolute immunity from suit

under state law for his prosecutorial functions.  *See, County of Washoe v. Dist. Ct.,* 98 Nev. 456,

457, 652 P.2d 1175 (Nev. 1982) and *Botello v. Gammick,* 413 F.3d 971, 976 (9th Cir. 2005).

### (iv)     State Constitutional Claims

To the extent Plaintiff cites to various provisions of the Nevada Constitution, such claims are subject to summary dismissal for the same reasons as are Plaintiff's federal constitutional claims.  Plaintiff references Article 1, ¶18, which is identical to the Fourth Amendment of the United States Constitution, and the Nevada Supreme Court analyzes wrongful arrest and unlawful seizure claims using the same analysis as is applied to federal constitutional claims. *See, Dekker/Perich/Sabatini Ltd. v. Eighth Jud. Dist. Ct.*, 137 Nev. 525, 495 P.3d 519 (Nev. 2021).  Plaintiff also references Article 1, ¶9 of the Nevada Constitution which relates to freedom of speech.  The Nevada Supreme Court has held that the scope of Nevada's free speech protection is "coextensive to, but no greater than, that of the First Amendment of the United States Constitution."  *S.O.C., Inc. v. Mirage Casino-Hotel,* 117 Nev. 403, 23 P.3d 243 (Nev. 2001).  Thus, the Court has held that the standard that applies to the state-law equivalent under Article 1, ¶9 is identical to that applicable to the First Amendment.  *See, Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for a Sound Gov't,* 120 Nev. 712, 100 P.3d 179 (Nev. 2004).  To the extent Plaintiff references the due process clause of the Nevada Constitution (Article 1, ¶8), again, Nevada's due process clause mirrors its federal counterpart and the Nevada courts look to federal due-process authority to guide their analysis of claims brought under its analog.  *See, Hernandez v. Bennett-Haron,* 128 Nev. 580, 586, 287 P.3d 305 (Nev. 2012).

To the extent Plaintiff references Article 1, ¶6, Nevada's counterpart to the Eighth Amendment's ban on cruel and unusual punishment, the same is inapplicable, as the Plaintiff's claim must be analyzed under the Fourth Amendment's objective reasonableness standard. Plaintiff was not subjected to confinement by the Defendants and this section of the Nevada Constitution is not applicable to the facts of this case.

### (v)     Inapplicable Criminal Statutes

To the extent Plaintiff references other state statutes in the footnote which appears on every page of his Complaint, including NRS 484B.653 (reckless driving), NRS 207.190 (coercion), NRS 200.310 (kidnapping), NRS 205.2715 (related to vehicles), NRS 197.200 (oppression) and NRS 205.220 (grand larceny), none of these criminal statutes provide a basis

for tort liability against the moving Defendants.[6] *See, Neville v. Eighth Judicial Dist. Ct.*, 133 Nev. 777, 781, 406 P.3d 499 (Nev. 2017)(without legislative intent to create a private judicial remedy, a cause of action does not exist and courts may not create one); *see also, Collins v. Palczewski,* 841 F. Supp.333, 340 (D. Nev. 1993)(with very limited exceptions, criminal statutes, including  NRS 197.200, cannot be enforced in civil actions).

**IV**

**CONCLUSION**

Based upon all of the foregoing, Defendants respectfully request that the Plaintiff's Complaint be dismissed and that judgment be entered in favor of the Defendants as a matter of law pursuant to FRCP 56.

DATED this 9th day of October, 2024.

THORNDAL ARMSTRONG, PC

By:   */s/ Katherine Parks*
KATHERINE F. PARKS, ESQ.
Nevada Bar No. 6227
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
Attorney for Defendants
CARSON CITY, JASON BUENO, SEAN PALAMAR, TYSON LEAGUE, JASON WOODBURY, and KENNETH FURLONG

---

[6]Plaintiff's reference to NRS 484B.653, part of Nevada's traffic laws, does not appear to be addressed to the moving Defendants, as there is no evidence anyone associated with the Carson City Sheriff's Office was driving the white van to which Plaintiff refers in ¶1 of his Complaint. *See,* ECF 1-1, p. 4.

- 28 -

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to FRCP 5(b), I certify that I am an employee of Thorndal Armstrong, PC, and that on this date I caused the foregoing CARSON CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT to be served on all parties to this action by:

  X    placing an original or true copy thereof in a sealed, postage prepaid, envelope in the United States mail at Reno, Nevada.

_____ United States District Court CM/ECF Electronic Filing Process

_____ hand delivery

_____ electronic means (fax, electronic mail, etc.)

_____ Federal Express/UPS or other overnight delivery

fully addressed as follows:

> Drew J. Ribar
> 3480 Pershing Ln
> Washoe Valley, NV  89704
> Pro Se Plaintiff

DATED this 9th day of October, 2024.

_____ /s/ Laura Bautista
An employee of Thorndal Armstrong, PC

## INDEX OF EXHIBITS

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 1 | Declaration of Jason Bueno |
| 2 | Relevant portion of Jason Bueno's body worn camera - manually filed |
| 3 | Video from Jason Bueno's patrol vehicle - manually filed |
| 4 | Video of CCSO Arrest @ NNCC Prison 08-30-2022 – manually filed |
| 5 | Declaration of Sean Palamar |
| 6 | Amended Criminal Complaint |
| 7 | Motion to Dismiss Criminal Complaint |
| 8 | *Kanvick v. City of Reno,* Case No. 3:06-cv-00058-RAM |