# Exhibit 1 –
# Declaration of Jason Bueno

# Exhibit 1

1    Katherine F. Parks, Esq.
     Nevada Bar No. 6227
2    Thorndal Armstrong, PC
     6590 S. McCarran Blvd., Suite B
3    Reno, Nevada 89509
     Tel:  (775) 786-2882
4    kfp@thorndal.com
     Attorney for Defendants
5    CARSON CITY, JASON BUENO, SEAN PALAMAR, TYSON LEAGUE,
     JASON WOODBURY, and KENNETH FURLONG
6

7                     UNITED STATES DISTRICT COURT

8                         DISTRICT OF NEVADA

9

10   DREW J. RIBAR,

11              Plaintiff,

                                     Case No.        3:24-cv-00103-ART-CLB
12   vs.

13   STATE OF NEVADA EX. REL. NEVADA     **DECLARATION OF JASON BUENO IN**
     DEPARTMENT OF CORRECTIONS,          **SUPPORT OF DEFENDANTS' MOTION**
14   CARSON CITY AND ITS SHERIFFS        **FOR SUMMARY JUDGMENT**
     OFFICE, CARSON CITY DISTRICT
15   ATTORNEYS OFFICE, CARSON CITY
     MANAGERS OFFICE, FERNANDEIS
16   FRAZAIER IN HIS OFFICIAL CAPACITY
     AS WARDEN OF NORTHERN NEVADA
17   CORRECTIONAL, AARON RYDER IN HIS
     OFFICIAL CAPACITY AS AN OFFICER OF
18   NEVADA DEPARTMENT OF
     CORRECTIONS, ROBERT SMITH IN HIS
19   OFFICIAL CAPACITY AS AN OFFICER OF
     NEVADA DEPARTMENT OF
20   CORRECTIONS, JASON BUENO IN HIS
     OFFICIAL CAPACITY AS AN OFFICER OF
21   CARSON CITY SHERIFF, SEAN
     PALAMAR RYDER IN HIS OFFICIAL
22   CAPACITY AS AN OFFICER OF CARSON
     CITY SHERIFF, TYSON DARIN LEAGUE
23   RYDER IN HIS OFFICIAL CAPACITY AS
     AN OFFICER OF CARSON CITY DISTRICT
24   ATTORNEY, JAMES DZURENDA
     (DIRECTOR NEVADA DEPARTMENT OF
25   CORRECTIONS), JASON D. WOODBURY
     (CARSON CITY DISTRICT ATTORNEY),
26   KENNETH T. FURLONG IN HIS
     CAPACITY AS SHERIFF CARSON CITY,
27   NV, OFFICER/DEPUTY/J. DOE 1-99,

28              Defendants.

I, Jason Bueno, do hereby declare as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the information contained herein.

2.      On August 30, 2022, at 1353 hours, I responded to 1721 Snyder Ave, Northern Nevada Correctional Center (NNCC), in reference to a suspicious subject on prison property. Prison officials had advised Dispatch that a male subject was parked on prison property and was refusing to leave.

4.      Upon arrival, I met with Sgt. Robert Smith from the Nevada Department of Corrections.  He informed me that a male subject, later identified as Drew Ribar, had parked on the prison entrance road and began filming restricted areas. Sgt. Smith advised Ribar that the area is restricted State property and that he was not authorized to remain on the property or continue his activities. Sgt. Smith instructed Ribar on how to obtain authorization to film on the prison grounds, but Ribar refused to leave and began walking toward the main prison gates while filming the area, including fence lines, security measures, and private vehicles of staff parked in the prison's parking lot.

5.      Due to the security risk posed to the property, staff and inmates, and because Ribar was uncooperative and ignored lawful orders to leave, Sgt. Smith initiated a lock down of the entire facility and surrounding areas. This included moving hundreds of inmates and staff to secure locations and verifying that everyone was accounted for and that the facility was secure.

6.      As Ribar approached the main gates and fence line, Lt. Aaron Ryer of NDOC contacted him and told him multiple times to leave the property.  Ribar refused all orders to leave and continued filming the sensitive security areas.

7.      Warden Frazier Fernandeis was alerted to the situation and contacted Ribar in front of the administrative building. Warden Fernandeis asked Ribar to identify himself and Ribar refused. Warden Fernandeis then repeated orders that Ribar leave the property immediately and cease filming security measures on the property.  Ribar continued to refuse and continued disrupting the operations of the facility and property.

8.      I spoke with Warden Fernandeis and he confirmed that Ribar was asked to leave

1  multiple times, but he refused, causing severe disruption of all operations on the property.

2  Warden Fernandeis also informed me that Ribar continued to film security measures and fence

3  lines around the facility, posing a safety and security risk.  Ribar was advised of the proper way

4  to access the property officially to conduct his business, but he refused to listen or comply with

5  lawful orders to leave the property.

6      9.      Warden Fernandeis requested that Ribar be taken into custody.  I placed Ribar in

7  handcuffs, ensured the proper fit and secured him in my patrol vehicle.  Ribar was given Miranda

8  warnings and was transported to the Carson City Jail where he was booked for Trespassing,

9  Obstructing a Public Officer, and Disturbing the Peace.

10     10.     Attached as Exhibit A is a true and correct copy of the incident report I prepared

11 regarding this incident.

12     11.     I had no involvement with the operation of any Facebook page relating to the

13 Carson City Sheriff's Office.

14     12.     My patrol vehicle was running and the air conditioning was on at all times while

15 Ribar was inside the vehicle on August 30, 2022.  There was continuous air flow in my patrol

16 vehicle, including through dedicated air vents in the area of the back seat of the vehicle.  The rear

17 window closest to the location where Ribar was seated was open for the majority of the time

18 Ribar was in the vehicle prior to transport to the Carson City Jail.

19     13.     Attached as Exhibit 2 to Defendants' Motion for Summary Judgment is a true and

20 correct copy of my body worn camera video taken on August 30, 2022.

21     14.     Attached as Exhibit 3 to Defendants' Motion for Summary Judgment is video

22 from my patrol vehicle which was taken on August 30, 2022.

23     I declare under penalty of perjury under the laws of the state of Nevada that the foregoing

24 are true.

25     Executed on ___10-7-___, 2024, in Reno, Washoe County, Nevada.

26

27                                        _____
                                          JASON BUENO
28

- 3 -

# EXHIBIT A

# EXHIBIT A

# Incident Report
# CARSON CITY SHERIFF'S OFFICE

**22-5359**

Supplement No
ORIG

Address
911 EAST MUSSER STREET
City, State, Zip Code
CARSON CITY, NV 89701

Reported Date
08/30/2022
Rpt/Incident Typ
TRSP
Member#
BUENO, JASON

Phone Number
775-887-2500
Fax Number
775-887-2016

## Administrative Information

| Agency | | Case No | Supplement No | Reported Date | Reported Time |
|---|---|---|---|---|---|
| CARSON CITY SHERIFF'S OFFICE | | 22-5359 | ORIG | 08/30/2022 | 13:53 |

| CAD Call No | Status | Rpt/Incident Typ | | | |
|---|---|---|---|---|---|
| 222420188 | Report | Trespassing | | | |

| Location | | | | | | | City |
|---|---|---|---|---|---|---|---|
| 1721 SNYDER AV | | | | | | | Carson City |

| ZIP Code | Rep Dist | Area | Beat | From Date | From Time | To Date | To Time | Primary Unit |
|---|---|---|---|---|---|---|---|---|
| 89701 | 100515 | 5 | 05 | 08/30/2022 | 13:53 | 08/30/2022 | 14:49 | 5443 |

| Member# | | Assignment | Entered By | Assignment | RMS Transfer |
|---|---|---|---|---|---|
| JB5554/BUENO,JASON | | Patrol | JB5554 | Patrol | Successful |

| Prop Trans Stat | Property? | Approving Officer | Approval Date | Approval Time |
|---|---|---|---|---|
| Successful | None | BM1634 | 08/30/2022 | 17:07:40 |

| Body Worn Camera Footage | Probable Cause | Statements | Vehicle IMP/Inventory Record |
|---|---|---|---|
| Yes | Yes | Yes | Yes |

| # Offenses | Offense | | Description | Complaint Type |
|---|---|---|---|---|
| 1 | 53166 NRS 207.200 | M | TRESPASS, NOT AMOUNT | |

| NIBRS | | | | | | Seq# | IBRS |
|---|---|---|---|---|---|---|---|
| 1 90JCC | 88 | 11 | | 53166 N | | 1 | 90J |

| Attempted/Completed | Used | Bias | Location Type | # Premises | Method of Entry | Criminal Activity | Weapon/Force |
|---|---|---|---|---|---|---|---|
| C | C | 88 | 11 | | | | |

| Cargo Theft? | NOC | D.V.? | # Child | Med Atn? | Prot Order? | DV Card? |
|---|---|---|---|---|---|---|
| | 53166 | N | | | | |

| # Offenses | Offense | | Description | Complaint Type |
|---|---|---|---|---|
| 2 | 52312 NRS 197.190 | M | FALSE STATEMENT OBST | |

| NIBRS | | | | | | Seq# | IBRS |
|---|---|---|---|---|---|---|---|
| 2 90ZCC | 88 | 11 | | 52312 N | | 2 | 90Z |

| Attempted/Completed | Used | Bias | Location Type | # Premises | Method of Entry | Criminal Activity | Weapon/Force |
|---|---|---|---|---|---|---|---|
| C | C | 88 | 11 | | | | |

| Cargo Theft? | NOC | D.V.? | # Child | Med Atn? | Prot Order? | DV Card? |
|---|---|---|---|---|---|---|
| | 52312 | N | | | | |

| # Offenses | Offense | | Description | Complaint Type |
|---|---|---|---|---|
| 3 | 53133 NRS 203.119 | M | DISTURB PEACE IN PUB | |

| NIBRS | | | | | | Seq# | IBRS |
|---|---|---|---|---|---|---|---|
| 3 90CCC | 88 | 11 | | 53133 N | | 3 | 90C |

| Attempted/Completed | Used | Bias | Location Type | # Premises | Method of Entry | Criminal Activity | Weapon/Force |
|---|---|---|---|---|---|---|---|
| C | C | 88 | 11 | | | | |

| Cargo Theft? | NOC | D.V.? | # Child | Med Atn? | Prot Order? | DV Card? |
|---|---|---|---|---|---|---|
| | 53133 | N | | | | |

## Person Summary

| Invl | Invl No | Type | Name | MNI |
|---|---|---|---|---|
| ARR | 1 | I | RIBAR,DREW J | 282907 |

| Race | Sex | DOB | | |
|---|---|---|---|---|
| W | M | | | |

| Invl | Invl No | Type | Name | MNI |
|---|---|---|---|---|
| VIC | 1 | G | STATE OF NEVADA | 298025 |

| Race | Sex | | | |
|---|---|---|---|---|
| | | | | |

| Invl | Invl No | Type | Name | MNI |
|---|---|---|---|---|
| WIT | 1 | I | FERNANDEIS,FRAZIER | 324297 |

| Race | Sex | DOB | | |
|---|---|---|---|---|
| B | M | | | |

| Report Officer | Printed At |
|---|---|
| JB5554/BUENO,JASON | 04/22/2024 09:29 |

Page 1 of 5

# Incident Report
## CARSON CITY SHERIFF'S OFFICE

**22-5359**

Supplement No
ORIG

### Person Summary

| Invl | Invl No | Type | Name | | MNI |
|------|---------|------|------|--|-----|
| WIT | 2 | I | RYER,AARON | | 324298 |
| Race | Sex | DOB | | | |
| W | M | | | | |

| Invl | Invl No | Type | Name | | MNI |
|------|---------|------|------|--|-----|
| WIT | 3 | I | SMITH,ROBERT | | 155766 |
| Race | Sex | DOB | | | |
| W | M | | | | |

### Vehicle Summary

| Invl | Type | License No | State | Lic Year | Year | Make | Model | Style | Color |
|------|------|-----------|-------|----------|------|------|-------|-------|-------|
| IMP | 2 | WCE593 | NV | 2023 | 2022 | GMC | DEN | PK | BLK |

| Report Officer | Printed At |
|----------------|-----------|
| JB5554/BUENO,JASON | 04/22/2024 09:29 |

Page 2 of 5

# Incident Report
# CARSON CITY SHERIFF'S OFFICE

**22-5359**

Supplement No
ORIG

## Arrestee 1: RIBAR,DREW J

| Involvement | Invl No | Type |
|---|---|---|
| Arrestee | 1 | Individual |

| Name | | | MNI | Race | Sex |
|---|---|---|---|---|---|
| RIBAR,DREW J | | | 282907 | White | Male |

| DOB | Age | Ethnicity | Juvenile? | Height | Weight | Hair Color | Eye Color | OFN_INVL |
|---|---|---|---|---|---|---|---|---|
| | 54 | Not of Hispanic origin | No | 6'02" | 145# | Brown | Green | 1 |

| PRN | NIBRS | | | |
|---|---|---|---|---|
| 491532 | 53 | R | | N |

| Vic/Ofnd Age | Residence | Domestic Violence? |
|---|---|---|
| 53 | Resident | No |

| Type | Address |
|---|---|
| Home | N |

| City | State | ZIP Code | Date |
|---|---|---|---|
| WASHOE VALLEY | Nevada | 89704 | 08/30/2022 |

| Type | ID No | OLS |
|---|---|---|
| Operator License | 803194531 | Nevada |

| Type | ID No |
|---|---|
| Social Security Number | |

| Involvement | Arrest Type | Arrest Date | Arrest Time | Booking No | Book Date |
|---|---|---|---|---|---|
| Arrested | Arrested - On View | 08/30/2022 | 14:15:00 | 2202416 | 08/30/2022 |

| Book Time | Status | Dispo |
|---|---|---|
| 15:09:00 | Booked | Misdemeanor-ADULT ONLY |

| Arrest Location | City |
|---|---|
| 1721 SNYDER AV | Carson City |

| Rep Dist | Beat | NIBRS |
|---|---|---|
| 100515 | 05 | N01 |

| Multi-Arrests | Armed With |
|---|---|
| Not applicable | Unarmed |

| NOC | | Counts | Level | Charge Literal |
|---|---|---|---|---|
| 52312 NRS 197.190 | M | 1 | M | FALSE STATEMENT OBST |

| NIBRS | Arrest Offense | Arrest NOC |
|---|---|---|
| 90Z52312 | 90Z | 52312 |

| NOC | | Counts | Level | Charge Literal |
|---|---|---|---|---|
| 53133 NRS 203.119 | M | 1 | M | DISTURB PEACE IN PUB |

| NIBRS | Arrest Offense | Arrest NOC |
|---|---|---|
| 90C53133 | 90C | 53133 |

| NOC | | Counts | Level | Charge Literal |
|---|---|---|---|---|
| 53166 NRS 207.200 | M | 1 | M | TRESPASS, NOT AMOUNT |

| NIBRS | Arrest Offense | Arrest NOC |
|---|---|---|
| 90J53166 | 90J | 53166 |

## Victim (Person) 1: STATE OF NEVADA

| Involvement | Invl No | Type |
|---|---|---|
| Victim (Person) | 1 | Government |

| Name | MNI | PRN |
|---|---|---|
| STATE OF NEVADA | 298025 | 491533 |

| Type | ID No | OLS |
|---|---|---|
| Operator License | 0201483640 | Nevada |

| Type | ID No |
|---|---|
| Social Security Number | |

| Type | ID No |
|---|---|
| Social Security Number | |

### IBRS Info

| Victim Invl No | NIBRS |
|---|---|
| 1 | 90J/90Z |

| Related Offenses |
|---|
| 90J/90Z |

| Report Officer | Printed At |
|---|---|
| JB5554/BUENO,JASON | 04/22/2024 09:29 |

# Incident Report
## CARSON CITY SHERIFF'S OFFICE

**22-5359**

Supplement No
ORIG

### Witness 1: FERNANDEIS,FRAZIER

| Involvement | Invl No | Type | Name |
|---|---|---|---|
| Witness | 1 | Individual | FERNANDEIS,FRAZIER |

| MNI | Race | Sex | DOB | Age | Ethnicity | Juvenile? | Height | Weight |
|---|---|---|---|---|---|---|---|---|
| 324297 | Black | Male | | | Not of Hispanic origin | | | |

| Hair Color | Eye Color | PRN |
|---|---|---|
| | | 491534 |

| NIBRS | Residence |
|---|---|
| R | Resident |

| Type | Address |
|---|---|
| Work | 1721 SNYDER AV |

| City | State | ZIP Code | Date |
|---|---|---|---|
| Carson City | Nevada | 89701 | 08/30/2022 |

| Phone Type | Phone No | Date |
|---|---|---|
| Work | (775)977-5098 | 08/30/2022 |

### Witness 2: RYER,AARON

| Involvement | Invl No | Type | Name |
|---|---|---|---|
| Witness | 2 | Individual | RYER,AARON |

| MNI | Race | Sex | DOB | Age | Juvenile? | Height | Weight | Hair Color | Eye Color | PRN |
|---|---|---|---|---|---|---|---|---|---|---|
| 324298 | White | Male | | | No | | | | | 491535 |

| Type | Address |
|---|---|
| Work | 1721 SNYDER AV |

| City | State | ZIP Code | Date |
|---|---|---|---|
| Carson City | Nevada | 89701 | 08/30/2022 |

| Phone Type | Phone No | Date |
|---|---|---|
| Work | (775)977-5040 | 08/30/2022 |

### Witness 3: SMITH,ROBERT

| Involvement | Invl No | Type | Name |
|---|---|---|---|
| Witness | 3 | Individual | SMITH,ROBERT |

| MNI | Race | Sex | DOB | Age | Juvenile? | Height | Weight | Hair Color | Eye Color | PRN |
|---|---|---|---|---|---|---|---|---|---|---|
| 155766 | White | Male | | | No | | | | | 491536 |

| Type | Address |
|---|---|
| Work | 1721 SNYDER AV |

| City | State | ZIP Code | Date |
|---|---|---|---|
| Carson City | Nevada | 89701 | 08/30/2022 |

| Type | ID No |
|---|---|
| Social Security Number | |

| Phone Type | Phone No | Date |
|---|---|---|
| Work | (775)977-5032 | 08/30/2022 |

### Vehicle: WCE593

| Involvement | Type | License No | State | Lic Year | Lic Type | Year | Make |
|---|---|---|---|---|---|---|---|
| Impounded | Truck/Van | WCE593 | Nevada | 2023 | Truck | 2022 | General Motors Corp. |

| Model | Style | Color | VIN | Storage |
|---|---|---|---|---|
| Denali | Pickup | Black | 1GT426C87EF109625 | Cal Neva Tow |

| Tow By | Condition | Auth By |
|---|---|---|
| Cal Neva Tow Storage Yard | Not damaged | PALAMAR,SEAN |

| Tow From |
|---|
| 1721 SNYDER AVE |

| Tow To |
|---|
| TOW YARD |

| Person Notified |
|---|
| DREW RIBAR |

### Modus Operandi

| Crime Code(s) |
|---|
| All others |

### Narrative

On 8/30/2022 at 1353 hours, I responded to 1721 Snyder Ave, Northern Nevada Correctional Center (NNCC) in reference to a suspicious subject on prison property. Prison Officials advised Dispatch, a male subject was parked on prison property, refusing to leave. We routinely respond to prisons in Carson City for suspicious activity, especially vehicles, due to concerns of potential involvement in escape.

| Report Officer | Printed At |
|---|---|
| JB5554/BUENO,JASON | 04/22/2024 09:29 |

Page 4 of 5

# Incident Report
# CARSON CITY SHERIFF'S OFFICE

**22-5359**

Supplement No
ORIG

## Narrative

Upon arrival, I made contact with Sgt. Smith from Nevada Department of Corrections, he described responding to meet with a male subject, later identified as Drew Ribar, who parked on the prison entrance road and began filming restricted areas. Sgt. Smith advised Drew the area was restricted State property and he was not authorized to remain on the property or continue his activities. Sgt. Smith instructed Drew on how to obtain authorization to film on the prison grounds, but the subject refused and began walking toward the main prison gates, while filming the area, including fence lines and security measures as well as private vehicles of staff in the parking lot.

Due to the security risk posed to the property, staff and inmates, as Drew was uncooperative and ignoring lawful orders to leave and without knowing his further intentions, Sgt. Smith initiated a lock down of the entire facility and surrounding areas. This includes moving hundreds of inmates and staff to secure locations and verifying everyone is accounted for and the facility is secure.

As the Drew approached the main gates and fence line, Lt. Aaron Ryer contacted him and told him multiple times to leave the property. Drew refused all orders to leave and continued filming the sensitive security areas.

Warden Frazier Fernandeis, was alerted to the situation and contacted Drew in front of the administrative building. Warden Fernandeis asked Drew to identify himself, but Drew refused. Warden Fernandeis then repeated orders to leave the property immediately and to cease filming security measures on the property. Drew refused and continued disrupting all operations in the facility and on the property.

I spoke with Warden Fernandeis, who confirmed Drew was asked to identify himself, but he refused. Confirmed Drew was asked to leave multiple times, but he refused, causing severe disruption of all operations on the property. Confirmed he was filming security measures and fence lines around the facility, posing a safety and security risk. Confirmed Drew was advised the proper way to access the property officially to conduct his business, but he refused.

Warden Fernandeis requested Drew be taken into custody. I placed Drew in handcuffs, ensured proper fit and secured him in my patrol vehicle. Drew wanted to debate and argue his position and rights. He was Mirandized, though he declined to answer questions, opting to continue with his own. I declined to debate the situation with him further and transported him to the jail where he was booked for Trespassing, Obstructing and Public Officer and Disturbing the Peace of Public Grounds.

Dep. Palamar assisted in obtaining statements from involved parties and towing Drew's vehicle from the property.

NFI

| Report Officer | Printed At |
|---|---|
| JB5554/BUENO,JASON | 04/22/2024 09:29 |

Page 5 of 5

**Exhibit 2 –**
**Relevant portion of Jason Bueno's body cam video --**
**Manually filed with Court**

**Exhibit 2**



Drew Ribar v. Carson City, et al.
3:24-cv-00103-ART-CLB

Exhibit 2 to Defendants'
Motion for Summary Judgment

**Exhibit 3 –
Video from Jason Bueno's patrol vehicle --
Manually filed with Court**

**Exhibit 3**



**Exhibit 4 –**
**Video of CCSO Arrest @ NNCC Prison --**
**Manually filed with Court**

**Exhibit 4**



Drew Ribar v. Carson City, et al.
3:24-cv-00103-ART-CLB

Exhibit 4 to Defendants'
Motion for Summary Judgment

# Exhibit 5 –
# Declaration of Sean Palamar

# Exhibit 5

Katherine F. Parks, Esq.
Nevada Bar No. 6227
Thorndal Armstrong, PC
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
Tel:  (775) 786-2882
kfp@thorndal.com
Attorney for Defendants
CARSON CITY, JASON BUENO, SEAN PALAMAR, TYSON LEAGUE,
JASON WOODBURY, and KENNETH FURLONG

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DREW J. RIBAR,<br><br>          Plaintiff,<br><br>vs.<br><br>STATE OF NEVADA EX. REL. NEVADA DEPARTMENT OF CORRECTIONS, CARSON CITY AND ITS SHERIFFS OFFICE, CARSON CITY DISTRICT ATTORNEYS OFFICE, CARSON CITY MANAGERS OFFICE, FERNANDEIS FRAZAIER IN HIS OFFICIAL CAPACITY AS WARDEN OF NORTHERN NEVADA CORRECTIONAL, AARON RYDER IN HIS OFFICIAL CAPACITY AS AN OFFICER OF NEVADA DEPARTMENT OF CORRECTIONS, ROBERT SMITH IN HIS OFFICIAL CAPACITY AS AN OFFICER OF NEVADA DEPARTMENT OF CORRECTIONS, JASON BUENO IN HIS OFFICIAL CAPACITY AS AN OFFICER OF CARSON CITY SHERIFF, SEAN PALAMAR RYDER IN HIS OFFICIAL CAPACITY AS AN OFFICER OF CARSON CITY SHERIFF, TYSON DARIN LEAGUE RYDER IN HIS OFFICIAL CAPACITY AS AN OFFICER OF CARSON CITY DISTRICT ATTORNEY, JAMES DZURENDA (DIRECTOR NEVADA DEPARTMENT OF CORRECTIONS), JASON D. WOODBURY (CARSON CITY DISTRICT ATTORNEY), KENNETH T. FURLONG IN HIS CAPACITY AS SHERIFF CARSON CITY, NV, OFFICER/DEPUTY/J. DOE 1-99,<br><br>          Defendants. | Case No.      3:24-cv-00103-ART-CLB<br><br>**DECLARATION OF SEAN PALAMAR IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

- 1 -

1      I, Sean Palamar, do hereby declare as follows:

2      1.    I am over the age of eighteen (18) and have personal knowledge of the

3  information contained herein.

4      2.    On August 30, 2022, at approximately 1359 hours, I was dispatched to 1721

5  Snyder Avenue, the Northern Nevada Correctional Center, in relation to a subject who as

6  trespassing.  I arrived with Deputy Bueno and we spoke with a Department of Corrections

7  Sergeant who said a male subject, Drew Ribar, had parked on the side of the road at the entrance

8  to the prison and refused to leave after being instructed to do so by prison staff.  The Sergeant

9  further advised that they had to put the prison and the work camp into lockdown due to the

10  security risk.

11      3.    After speaking with NDOC law enforcement officers, I called a tow truck to have

12  Ribar's vehicle removed from Snyder Avenue.  I had the vehicle removed at the request of the

13  NDOC officers on scene and NDOC considers it a safety and security risk to have vehicles

14  parked on Snyder Avenue, the entrance road to the prison.

15      4.    Ribar's vehicle was parked in a prohibited area, as vehicles are not permitted to

16  be parked on either side of Snyder Avenue.

17      I declare under penalty of perjury under the laws of the state of Nevada that the foregoing

18  are true.

19      Executed on _October 8_, 2024, in Carson City, Nevada.

20

21                     SEAN PALAMAR

22

23

24

25

26

27

28

- 2 -

# Exhibit 6 –
# Amended Criminal Complaint

# Exhibit 6

FILED

2022 SEP 16 PM 3:42

OF THE PEACE

1    Carson City District Attorney's Office
     JASON D. WOODBURY
2    DISTRICT ATTORNEY
     TYSON DARIN LEAGUE
3    Supervising Deputy District Attorney
     Nevada Bar No.: 13366
4    tleague@carson.org
     885 East Musser Street, Suite 2030
5    Carson City, NV 89701
     Telephone (775) 887-2072
6    Facsimile (775) 887-2129
     Representing State of Nevada
7

8

9                IN THE CARSON CITY JUSTICE COURT

10            IN AND FOR CARSON CITY, STATE OF NEVADA

11

12   STATE OF NEVADA,

13              Plaintiff,                      Case No.    22 CR 01231 1C

14         v.                                   Dept. No.    I

15
     DREW J RIBAR,
16

17              Defendant.

18                   **AMENDED CRIMINAL COMPLAINT**

19         Tyson Darin League, Supervising Deputy District Attorney for Carson City,

20   Nevada, complains and declares, upon information, belief and/or personal knowledge,

21   that DREW J RIBAR, the Defendant, above-named, at Carson Township, in Carson

22   City, State of Nevada, has committed the crime(s) of: TRESPASS, NOT AMOUNTING

23   TO BURGLARY, a violation of NRS 207.200, a Misdemeanor and COMMISSION OF

24   ACT IN AREA OF PUBLIC BUILDING INTERFERING WITH CONDUCT OF

25   ACTIVITIES, a violation of NRS 203.119, a Misdemeanor, in the manner following:

Office of the District Attorney
Carson City, Nevada
885 East Musser Street, Suite 2030, Carson City, NV 89701
Tel (775) 887-2072 Fax (775) 887-2129

1

Office of the District Attorney
Carson City, Nevada
885 East Musser Street, Suite 2030, Carson City, NV 89701
Tel: (775) 887-2072 Fax (775) 887-2129

## Count I

### TRESPASS, NOT AMOUNTING TO BURGLARY

### (MISDEMEANOR - NRS 207.200)

That the Defendant, Drew J Ribar, on or about August 30, 2022, at Carson Township, in Carson City, State of Nevada, did willfully remain on property after being told to leave by the lawful owner or occupant of such property or their designated representative, to wit: the Defendant refused to leave Nevada State Department of Corrections grounds after being told to leave by a Sergeant, a Lieutenant and the Warden himself, instead remaining on the property refusing to leave, all of which occurred at or near Northern Nevada Correctional Center, in Carson City, State of Nevada.

## Count II

### COMMISSION OF ACT IN AREA OF PUBLIC BUILDING INTERFERING WITH

### CONDUCT OF ACTIVITIES

### (MISDEMEANOR - NRS 203.119)

That the Defendant, Drew J Ribar, on or about August 30, 2022, at Carson Township, in Carson City, State of Nevada, did commit any act in the area surrounding a public building which disturbed the normal operation of such building, and when asked to leave by the proper official in charge of the building refused to leave, to wit: the Defendant was filming security measures without proper pre authorization as required, and/or license plates of vehicles at Northern Nevada Correctional Facility, and/or was wearing blue on prison grounds, and/or parked his vehicle upon prison property, and/or was walking through the property without proper authorization, this activity caused the prison to initiate an unexpected lockdown interfering with the activities normally carried out in the building, and the Defendant refused to leave the

1  area after being asked by a Lieutenant at the facility, a Sergeant at the facility and the

2  Warden in charge of the facility, all of which occurred at or near 1721 Snyder Ave, in

3  Carson City, State of Nevada.

4      All of which is contrary to the form of the Statutes in such cases made and

5  provided and against the peace and dignity of the State of Nevada.  Said Complainant

6  declares under penalty of perjury under the law of the State of Nevada that the

7  foregoing is true and correct and prays that the Defendant may be dealt with according

8  to law.

9      DATED this 15th day of September, 2022.

10

11  TYSON DARIN LEAGUE

  Supervising Deputy District Attorney

12  Nevada Bar No. 13366

Office of the District Attorney
Carson City, Nevada
885 East Musser Street, Suite 2030, Carson City, NV 89701
Tel: (775) 887-2072 Fax (775) 887-2129

# Exhibit 7 -
# Motion to Dismiss Criminal Complaint

# Exhibit 7



1  Carson City District Attorney's Office
   JASON D. WOODBURY
2  DISTRICT ATTORNEY
   MELISSA ROSENTHAL
3  Deputy District Attorney
   Nevada Bar No.: 14261
4  mrosenthal@carson.org
5  885 East Musser Street, Suite 2030
   Carson City, NV 89701
6  Telephone (775) 887-2072
   Facsimile (775) 887-2129
7  Representing State of Nevada

8

9                    IN THE CARSON CITY JUSTICE COURT

10              IN AND FOR CARSON CITY, STATE OF NEVADA

11

12  STATE OF NEVADA,

13            Plaintiff,                       Case No.    22 CR 01231 1C

14       v.                                    Dept. No.    I

15  DREW J. RIBAR,

16            Defendant.

17

18                           **MOTION TO DISMISS**

19          COMES NOW, the Plaintiff, STATE OF NEVADA, by and through counsel,

20  JASON D. WOODBURY, District Attorney and Melissa Rosenthal, Deputy District

21  Attorney in and for Carson City, State of Nevada, and herein enters its Motion to

22  Dismiss in the above-captioned case wherein the Defendant above-named is

23  represented by Counsel, Richard Salvatore Esq..

24          This motion is based upon all pleadings and papers heretofore filed in this case,

25

1

1  the provisions of NRS 178.554, and the interests of justice, which would best be served

2  by such dismissal.    Specifically, Defendant completed conditions of his deferred

3  sentence.

4          DATED this 12th day of December, 2023.

5                                        JASON D. WOODBURY
                                         District Attorney
6

7                                        By: _____
                                         MELISSA ROSENTHAL
8                                        Deputy District Attorney
                                         Nevada Bar No. 14261
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Office of the District Attorney
Carson City, Nevada
885 East Musser Street, Suite 2030, Carson City, NV 89701
Tel: (775) 887-2072 Fax (775) 887-2129

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the Office of the Carson City District Attorney and that on this 12th day of December, 2023, I caused to be served a copy of the foregoing **MOTION TO DISMISS**, together with an **ORDER OF DISMISSAL** by faxing and delivering via Acme Messenger Service said document addressed to:

Richard Salvatore Esq.
301 Flint Street
Reno, NV 89501
(775) 786-5800

Office of the District Attorney
Carson City, Nevada
885 East Musser Street, Suite 2030, Carson City, NV 89701
Tel: (775) 887-2072 Fax (775) 887-2129

3

# Exhibit 8 -
## *Kanvick v. City of Reno,* Case No. 3:06-cv-00058-RAM

# Exhibit 8

2008 WL 873085
Only the Westlaw citation is currently available.
United States District Court, D. Nevada.

Scott KANVICK, Plaintiff,

v.

CITY OF RENO, Police et. al, Officer Anthony
Elges, Oliver Miller, and Officer Robert
Knight, Citi-Center Apartments, Defendants.

No. 3:06-CV-00058-RAM.
|
March 27, 2008.

**Attorneys and Law Firms**

Scott Kanvick, Carson City, NV, pro se.

Jack D. Campbell, Reno City Attorney's Office, Michael J.
Morrison, Reno, NV, for Defendants.

### *MEMORANDUM DECISION AND ORDER*

ROBERT A. McQUAID, JR., United States Magistrate
Judge.

 **\*1** Before the court is Defendants' (City of Reno, Police
et. al., Officer Anthony Elges, Officer Oliver Miller and
Officer Robert Knight) Motion for Summary Judgment (Doc.
# 42). Plaintiff opposed the motion (Doc. # 47) and Defendant
replied (Doc. # 49). [1] Also before the court is Defendant City
Center Limited Partnership's Motion for Summary Judgment
(Doc. # 51). Plaintiff opposed the motion (Doc. # 55) and
Defendant replied (Doc. # 57). [2] Also before the Court is
Plaintiff's Motion for Partial Summary Judgment (Doc. #
56). Defendants filed a motion to strike Plaintiff's motion
and a request for sanctions (Doc. # 58). Defendants also
filed a request for extension of time to respond (Doc. # 59).
Plaintiff opposed Defendants' motion to strike (Doc. # 61) and
opposed Defendants' motion for extension of time to respond
(Doc. # 62). Defendants did not file a response to Plaintiff's
motion. Finally, also before the court is Plaintiff's Motion
for Judgment (Doc. # 68), to which Defendants again filed
a motion to strike (Doc. # 69). Plaintiff has not yet filed a
response. A hearing has been set for March 24, 2008 on all
pending motions.

## I. BACKGROUND

Plaintiff alleges he was unlawfully detained and arrested,
subjected to an illegal search of his person and was falsely
imprisoned when Defendant Citi-Center Apartments acted
in concert with Reno Police Officers to deprive him of his
constitutional rights (Doc. # 11). Plaintiff further alleges the
City of Reno denied him due process after he was transported
to the County Jail by failing to provide him with a probable
cause hearing within 48-hours of his warrantless arrest and
failing to timely provide him with a preliminary hearing
(*Id.*). Plaintiff also alleges Defendant officers subjected him
to cruel and unusual punishment by detaining him in a hot,
unventilated van for an excessive amount of time and driving
wildly subjecting Plaintiff to back pain and injury, as well
as night sweats and loss of sleep, and "creating deliberate
indifference and continual medical treatment." (*Id.* at 6).

Plaintiff's First Amended Complaint includes the following
causes of action: 1) violation of the Fourth and Fourteenth
Amendments against unreasonable search and seizures and
false imprisonment [3] ; 2) violation of the Fifth and Fourteenth
Amendments Due Process Clause and Equal Protection
Clause to Due Process [4] ; and 3) violation of the Eighth
and Fourteenth Amendments against cruel and unusual
punishment (*Id.*).

## II. STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is to avoid unnecessary
trials when there is no dispute as to the facts before the court.

*Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.,* 18
F.3d 1468, 1471 (9th Cir.1994). The moving party is entitled
to summary judgment where, viewing the evidence and the
inferences arising therefrom in favor of the nonmovant,
there are no genuine issues of material fact in dispute
and the moving party is entitled to judgment as a matter
of law. FED.R.CIV.P. 56(c); *Bagdadi v.. Nazar,* 84 F.3d
1194, 1197 (9th Cir.1996). Judgment as a matter of law is
appropriate where there is no legally sufficient evidentiary
basis for a reasonable jury to find for the nonmoving party.
FED.R.CIV.P. 50(a). Where reasonable minds could differ on
the material facts at issue, however, summary judgment is not
appropriate. *Warren v. City of Carlsbad,* 58 F.3d 439, 441
(9th Cir.1995), *cert. denied,* 516 U.S. 1171 (1996).

**\*2** The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. 🚩 *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. 🚩 *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED.R.CIV.P. 56(c); 🚩 *Beyene v. Coleman Sec. Serv., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. 🚩 *Anderson,* 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. 🚩 *Celotex,* 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

## III. DISCUSSION

### *DEFENDANTS' (CITY OF RENO, POLICE ET. AL., OFFICER ANTHONY ELGES, OFFICER OLIVER MILLER AND OFFICER ROBERT KNIGHT) MOTION FOR SUMMARY JUDGMENT*

Defendants City of Reno and Officer Elges, Miller and Knight (hereinafter "Defendants") move for summary judgment on each of Plaintiff's claims asserting the following arguments: 1) Plaintiff failed to plead facts sufficient to show a conspiracy between Defendants and the apartment manager of Citi–Center apartments; 2) Plaintiff failed to show an unlawful search and seizure or false imprisonment because Defendants had probable cause to arrest Plaintiff for domestic battery;

3) Plaintiff's due process claim is inapplicable to Defendants because Plaintiff was in the custody of Washoe County at the time of the alleged due process deprivations; and 4) Plaintiff failed to show Defendants subjected Plaintiff to a substantial risk of harm or that he did, in fact, suffer harm to support his cruel and unusual punishment claim (Doc. # 42). Defendants further argue Plaintiff has failed to state a claim against the Defendant officers in their official capacities, the City of Reno is a municipality and cannot be held liable where no underlying violation of its officers exists, the Reno Police Department is not an entity capable of being sued, and Defendants are entitled to qualified immunity (*Id.*).

**\*3** Plaintiff argues the following: 1) Defendants and the apartment manager of Citi–Center Apartments did, in fact, conspire to violate Plaintiff's constitutional rights; 2) Defendants subjected Plaintiff to an unlawful search and seizure and false imprisonment when they arrested Plaintiff without probable cause; 3) Defendants violated Plaintiff's due process rights, despite his being in the custody of Washoe County, because their actions led to the due process violation and the City of Reno is responsible for the Reno Justice Court; 4) Defendants lack standing to claim entitlement to summary judgment on Plaintiff's cruel and unusual punishment claim; 5) Plaintiff is suing the Defendant officers in their individual and official capacities; 6) the City of Reno is liable for its policies, practices and customs and its condoning of the Defendant officers' illegal acts; 7) Defendants lack qualified immunity; and 8) the Reno Police Department is not an entity being sued (Doc. # 47).

### A. *Conspiracy (Claim I)*

Section 1983 actions may be brought to redress constitutional violations effected under color of state law. 🚩 *Fonda v. Gray,* 707 F.2d 435, 437 (9th Cir.1983). "A private party may be considered to have acted under color of state law when it engages in a conspiracy or acts in concert with state agents to deprive one's constitutional rights." *Id.* (citing 🚩 *United States v. Price,* 383 U.S. 787, 794 (1966); 🚩 *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970); 🚩 *Stypmann v. City and County of San Francisco,* 557 F.2d 1338, 1341–1342 (9th Cir.1977); 🚩 *Briley v. California,* 564 F.2d 849, 858 (9th Cir.1977); 🚩 *Rankin v. Howard,* 633 F.2d 844, 850 (9th Cir.1980), *cert. denied,* 451 U.S. 939 (1981). There must be "significant" state involvement in the action for a

private individual to have acted "under color of state law."

🚩 *Howerton v. Gabica,* 708 F.2d 380, 382 (9th Cir.1983).

The Supreme Court has articulated a number of tests or factors in determining when state action is "significant", including the governmental nexus test, the joint action test, the public function test, and the state compulsion test. 🚩 *Howerton,* 708 F.2d at 383. The Ninth Circuit has noted, however, that "[w]hile these factors are helpful in determining the significance of state involvement, 'there is no specific formula for defining state action.' " *Id.* (citing *Melara v. Kennedy,* 541 F.2d 802, 805 (9th Cir.1976). "The extent of state involvement remains a factual inquiry." *Id.*

At issue here is the joint action test. In *Adickes and Price,* the Court explained the "joint action" test is met where "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of [🚩 42 U.S.C. § 1983] ... It is enough that [the private party] is a willful participant in joint activity with the State or its agents ." *Id.* 🚩 *Adickes,* 398 U.S. at 152; 🚩 *Price,* 383 U.S. at 794; *accord,* 🚩 *Dennis v. Sparks,* 449 U.S. 24, 27–29 (1980); 🚩 *Sykes v. California,* 497 F.2d 197, 200 (9th Cir.1974). A private party is liable under this theory, however, only if its particular actions are "inextricably intertwined" with those of the government. *Mathis v. Pac. Gas & Elec. Co.,* 75 F.3d 498, 503 (9th Cir.1996); 🚩 *Collins v. Womancare,* 878 F.2d 1145, 1154 (9th Cir.1989) (necessitating a showing of "substantial cooperation" between the private party and the State). A conspiracy between the State and a private party to violate another's constitutional rights may also satisfy the joint action test. *See* 🚩 *Adickes,* 398 U.S. at 150–152; 🚩 *Howerton,* 708 F.2d at 383; 🚩 *United Steelworkers v. Phelps Dodge Corp.,* 865 F.2d 1539, 1546–1547 (9th Cir.1989) (en banc).

**\*4** To prove a conspiracy between the state and a private party under 🚩 § 1983, Plaintiff must show an agreement or "meeting of the minds" to violate constitutional rights. 🚩 *Fonda,* 707 F.2d at 438; *see also* 🚩 *Adickes,* 398 U.S. at 158; 🚩 *United Steelworkers of America,* 865 F.2d at 1540–1541. Each participant need not know the exact details of the conspiracy, but each participant must at least share the common objective of the conspiracy. *Id.* "Evidence that police failed to exercise independent judgment will

support an inference of conspiracy with a private party."

🚩 *United Steelworkers of America,* 865 F.2d at 1541 (citing 🚩 *Gramanos v. Jewel Companies,* 797 F.2d 432, 435–436 (7th Cir.1986) (police agreement to arrest anyone designated by shopkeeper constitutes conspiracy), *cert. denied,* 481 U.S. 1028 (1987)).

Defendants assert Officers Elges, Knight and Miller did not enter into an agreement with the night manager of Citi–Center Apartments and that, in fact, none of the officers even had a conversation with the night manager (Doc. # 42 at 8). Thus Defendants contend that, without any communication, there can be no conspiracy (*Id.*).

Plaintiff argues the night manager willfully participated in joint state action for purposes of violating his civil rights and a meeting of the minds was apparent (Doc. # 47 at 4). Plaintiff alleges the night manager was the person who pointed Plaintiff out to the police and the night manager and the officers were the people accusing Plaintiff of a crime; therefore, the night manager was acting under color of state law (Doc. # 47 at 4). Furthermore, Plaintiff asserts his mother was present at the scene and she indicates that police "interjected their own feelings between the manager and themselves before questioning my son." (*Id.,* Exh. A). In Plaintiff's First Amended Complaint, he alleges the night manager told police that residents had witnessed Plaintiff and his girlfriend fighting and that an anonymous person could attest to the alleged acts (Doc. # 11 at 5). Plaintiff further alleges no witness reports were taken and the officers did not investigate, but, rather took the night manager's word that the alleged acts occurred (*Id.*). Thus, Plaintiff is essentially arguing that the police failed to exercise independent judgment to support an inference of conspiracy with the night manager.

Whether Defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury so long as there is a possibility that the jury can infer from the circumstances that the alleged conspirators had a meeting of the minds and thus reached an understanding to achieve the conspirator's objectives. 🚩 *Adickes,* 398 U.S. at 158–159. The facts of this case do not support an inference there was a meeting of the minds between Defendants and the apartment manager. Instead, the facts contradict Plaintiff's version of events and support Defendants' contention that no conspiracy existed.

**\*5** First, the evidence indicates the victim, and not the apartment manager, called the police for assistance after fighting with Plaintiff (Doc. # 42, Exh. E, p. 5). The Incident Report states the victim informed officers she was eventually able to get to the lobby of the apartment complex, despite Plaintiff following her and trying to stop her from leaving, in order to call police for assistance (*Id.*). Plaintiff has produced no evidence to contradict the Incident Report. Even if the victim requested the apartment manager call police on her behalf, it is the victim who requested police assistance.

Second, the evidence indicates the victim, and not the apartment manager, pointed Plaintiff out to the police when Plaintiff entered the lobby after officers arrived at the scene. Plaintiff offers no evidence, other than mere speculation, to support his allegation that the apartment manager pointed him out to police (Doc. # 42, Exh. A ("Kanvick appeared in the lobby area, and Simmons immediately identified him."), Exh. C ("Before we left the lobby, Mr. Kanvick entered the lobby and was identified by the victim."), Exh. E ("As I was speaking to SIMMONS, KANVICK came into the lobby to speak to us.")).

Third, the evidence supports Defendants' assertion that an anonymous *female* witness, and not the apartment manager, relayed information to police she witnessed the couple arguing on the second floor of the apartment complex, not in the lobby, and it appeared Plaintiff was not allowing the victim to leave (*Id.,* Exh. E).

Fourth, Plaintiff's allegation that the officers did not investigate and merely took the apartment manager's word is belied by the record. The evidence indicates Officer Elges interviewed the victim and the victim reported Plaintiff has become increasingly violent, had been going through her cell phone looking for previously dialed phone numbers, grabbed her by her hair when she attempted to leave the apartment, caused her to drop her baby, and pulled out a large handful of her hair (*Id.,* Exh. A). Furthermore, the evidence indicates officers ran a criminal history of Plaintiff and determined he had two prior domestic violence arrests within the past seven (7) years (*Id.*). Based on Plaintiff's criminal history, the physical evidence of the loss of hair from the victim's head, the lack on injury to Plaintiff despite his allegations the victim hit him in the face, and the anonymous witness's statement, the police determined Plaintiff was the aggressor and placed Plaintiff under arrest (*Id.*). Thus, the evidence shows the officers independently investigated the domestic violence report when they arrived at the scene, and based on

that investigation, determined there was probable cause to arrest Plaintiff.

Under these facts, Plaintiff has failed to show that a jury could make an inference that there was a meeting of the minds between Defendants and the apartment manager to deprive Plaintiff of his constitutional rights. The evidence shows Defendants did investigate independently and did not rely on the night manager's word in determining whether to arrest Plaintiff. To the contrary, Defendants responded to the scene after the victim called police and reported a domestic battery, investigated the victim's allegations and found evidence of a possible domestic battery, received similar information from an anonymous witness confirming the victim's version of events, ran a criminal history on Plaintiff discovering two (2) prior domestic violence charges within the past seven (7) years and found Plaintiff to be not credible. Based on this information, Defendants determined probable cause existed to arrest Plaintiff, and did, in fact, arrest Plaintiff for domestic battery. Thus, Plaintiff has failed to show a conspiracy between Defendants and the apartment manager.

### B. *Unlawful Search and Seizure (Claim I)*

**\*6** "The touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno,* 500 U.S. 248, 250 (1991) (internal citations omitted). As a general rule, searches and seizures violate the Fourth Amendment unless they are based on probable cause and executed pursuant to a valid warrant or are subject to the limited number of exceptions carved out by the Supreme Court within which a warrant is not required. *Katz v. United States,* 389 U.S. 347, 357 (1967); *Minnesota v. Dickerson,* 508 U.S. 366, 272 (1993); *United States v. Huguez–Ibarra,* 954 F.2d 546, 551 (9th Cir.1992). Among these exceptions is the search incident to arrest. The search incident to arrest exception permits law enforcement officers to conduct a warrantless search of a person who is arrested, and of his surrounding area, when the search is incident to the arrest. *Chimel v. California,* 395 U.S. 752, 762–763 (1969). State law governing arrests is relevant to assessing the constitutionality of a search incident to that arrest. *United States v. Mota,* 982 F.2d 1384, 1387 (9th Cir.1993).

In Nevada, NRS 171.124 restricts the authority of an officer to make a felony arrest without a warrant to offenses committed in his presence, or to instances where he has reasonable cause to believe that the person arrested has committed a felony. Reasonable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that a felony had been committed by the person arrested.

🚩 *Nootenboom v. State,* 82 Nev. 329, 418 P.2d 490 (1966). "The constitutional validity of an arrest without a warrant for a felony not committed in the officer's presence depends on whether, at the moment the arrest is made, he has probable cause to make it. [Thus,] [p] robable cause [also] exists if the facts and circumstances known to the officer warrant a prudent man in believing that a felony had been committed by the person arrested." *Washington v. State,* 94 Nev. 181, 183–184, 576 P.2d 1126, 1128 (1978).

Under federal law, determining whether a police officer had probable cause is ascertained by looking at the facts known to the officer at the time of the arrest. *Turner v. County of Washoe,* 759 F.Supp. 630, 634 (D.Nev.1991). Probable cause exists if the facts and circumstances within the person's knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person had committed a crime. *Id.* The existence of probable cause vitiates any claim of unlawful arrest. 🚩⚠️*Pierson v. Ray,* 386 U.S. 547 (1967); 🚩*Wyatt v. Cole,* 504 U.S. 158, 165 (1992); *Turner,* 759 F.Supp. at 633 ("It has long been established that a police officer who arrests with probable cause is immune from suit in a civil rights action.").

Defendants arrested Plaintiff for felony domestic battery (Doc. # 42, Exh. E).[5] Thus, the proper inquiry is whether, at the moment of the arrest, Defendants had probable cause to believe Plaintiff had committed a domestic battery.

**\*7** Defendants assert the officers received reasonably trustworthy information from the victim, the dispatch call from security at Citi–Center Apartments and an anonymous eyewitness (Doc. # 42 at 9). Defendants further assert Officer Elges observed additional evidence, including clumps of hair pulled from the victim's head and dried blood around the victim's mouth (*Id.*). Therefore, Defendants submit that the totality of the information and evidence received lead the officers to believe that Plaintiff did, in fact, commit a domestic battery (*Id.*).

Plaintiff argues that the alleged evidence Defendants relied upon was not enough to sustain a conviction, thus, it was not enough evidence to arrest (Doc. # 47 at 5). Plaintiff further argues courts do not usually look to police reports as evidence and the Declaration and Supplement in this case are not sworn affidavits in support of the arrest and a criminal complaint would be the only avenue to arrest Plaintiff since Defendants did not acquire probable cause (Doc. # 47 at 5). Plaintiff contends Defendants did not acquire probable cause because they obtained no written statements from the victim, the anonymous third party, or Plaintiff's mother; no officer viewed any dried blood around the victim's mouth, which is supported by the victim's refusal to cooperate and complete a written statement or allow officers to take photos of her alleged injuries; and there was no evidence Plaintiff pulled the victim's hair, as there was no hair wrapped in Plaintiff's fingers, on his shirt, or on the area around him (*Id.* at 6). Plaintiff contends no dried blood or hair was found in the apartment and no photos were taken, which is evidenced by the information not being included in Officer Elges Affidavit (*Id.*). According to Plaintiff, "[t]he lack of evidence in this case is lack of probable cause." (*Id.*). Finally, Plaintiff asserts the only other person listed in the instant motion is the night manager, who Plaintiff contends is the "anonymous third party" and there was no witness statement because there was no witness, just as there was no dried blood, no photos, no hair and no probable cause (*Id.* at 7).

First, Plaintiff's argument—because the evidence was not enough to sustain a conviction, it is necessarily not enough to constitute probable cause to arrest—fails as a matter of law. Whether charges are later dismissed does not affect the determination of whether probable cause existed to support the arrest. *Beauregard v. Wingard,* 362 F.2d 901, 903 (9th Cir.1996) ("[W]here probable cause does exist civil rights are not violated by an arrest even though innocence may be subsequently be established.").

Second, neither Nevada law nor federal law require Defendants obtain sworn witness statements in order to establish probable cause to arrest. The law requires Defendants have knowledge obtained from the facts and circumstances and of which they have reasonably trustworthy information sufficient to warrant a prudent man in believing that the person had committed a crime. Here, the evidence shows Defendants obtained information from the facts and circumstances at the time of the arrest, including oral statements from the victim, eyewitness testimony from an anonymous female witness on the second floor, the dispatch

call from security at Citi–Center Apartments, and Officer Elges personal observations of clumps of hair pulled from the victim's head and dried blood around the victim's mouth (Doc. 42 at 9). While Plaintiff insists that these things did not occur, he offers no proof, but mere conclusory allegations that because no written statements were obtained and the anonymous witness did not fill out a report, Defendants lacked probable cause to arrest him. It is important to note that Plaintiff contends the arrest "would have been valid if the 'anonymous witness' did fill out a report." (Doc. # 47 at 7). However, the Ninth Circuit makes clear that it accepts anonymous tips as a basis for probable cause where significant details of the tip were corroborated. *See* *Hopkins v. City of Sierra Vista, Arizona,* 931 F.2d 524 (9th Cir.1991); *United States v. Rodriguez,* 869 F.2d 479 (9th Cir.1989); *United States v. Fixen,* 780 F.2d 1434 (9th Cir.1986). The evidence indicates the officers did, in fact, corroborate the anonymous witness's statement or, rather, the witness corroborated what the victim already told Officer Elges. In a signed, sworn affidavit, Officer Knight states that, while Officer Miller met with Plaintiff and Officer Elges met with the victim, an independent witness approached him and reported seeing Plaintiff try to prevent the victim from leaving the building and indicating she observed blood on the victim's mouth at the same time (Doc. # 42, Exh. B). Officer Knight relayed this information to Officer Elges and Officer Miller after the victim already identified Plaintiff as the aggressor, after Officer Elges witnessed the victim run her fingers through her hair and saw large clumps of hair come out, and after Plaintiff apparently admitted to Officer Miller that he had been in an argument with the victim regarding the victim wanting to leave (*Id.,* Exh. A, Exh. C). Thus, under these facts, Defendants had reasonably trustworthy information sufficient to warrant a prudent man in believing Plaintiff committed domestic battery.

**\*8** Third, Plaintiff's statements to Officer Miller, together with the facts and circumstances, support the officers' belief that Plaintiff was the aggressor and had committed a domestic battery. In a signed, sworn affidavit, Officer Miller states Plaintiff told him he had been in an argument with the victim about the victim wanting to leave, apparently claiming he tried to give her $5.00 and the victim attempting to grab his wallet instead (*Id.,* Exh. C). Officer Miller further states Plaintiff told him the victim became crazy and struck Plaintiff in the face three (3) times (*Id.*). Officer Miller noted there was no evidence of any injury to Plaintiff's face, there was nothing disarray about Plaintiff and no physical injuries were

evident (*Id.*). Then, after informing Plaintiff that the victim said Plaintiff pulled large clumps of hair out of her head, Plaintiff told Officer Miller that the victim had pulled her own hair out (*Id.*). Plaintiff did not dispute the victim's hair being pulled out or the fact of her trying to leave; rather, Plaintiff disputes that he was the aggressor or that he pulled her hair out. In light of all the surrounding circumstances, including Plaintiff's prior domestic violence criminal history, the officers apparently determined Plaintiff was not credible and the victim and anonymous witness were credible. Thus, based on all the information obtained by the officers and all the surrounding circumstances, Officer Elges placed Plaintiff under arrest (*Id.,* Exh. A).

Fourth, Plaintiff attaches to his opposition the Reno Justice Court Proceedings, where he was charged with felony domestic battery (Doc. # 47, Exh. B). Exhibit B clearly indicates a probable cause affidavit was reviewed by the judge in those proceedings and the judge found probable cause (Doc. # 47, Exh. B). Plaintiff has presented no evidence to indicate Exhibit B is inaccurate, given Plaintiff attaches said exhibit to apparently support own his allegations.

Under these facts, the record shows, at the moment of the arrest, Defendants had probable cause to arrest Plaintiff and the facts and circumstances known to the officers would warrant a prudent man in believing Plaintiff had committed felony domestic battery. Furthermore, "[h]earsay will support a finding of probable cause if the informer is found credible and the basis for believing him credible is shown." *Id.* (citing *McCray v. Illinois,* 386 U.S. 300 (1967)). Defendants have made such a showing here. Accordingly, Plaintiff's claim that Defendants committed an unlawful search and seizure under the Fourth Amendment fails.

### C. *False Imprisonment (Claim I)*

In Nevada, false imprisonment is the confinement or detention of another person without sufficient legal authority. NRS § 200.460. A law enforcement officer is authorized by state statute to detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime. NRS § 171.123. Thus, to establish false imprisonment, it is necessary to prove Plaintiff was restrained of his liberty under the probable imminence of force without any legal cause or justification. *Marshall v. City of Carson,* 86 Nev. 107, 110, 464 P.2d 494 (1970); *Hernandez v. City of Reno,* 97 Nev. 107, 110, 464 P.2d 668 (1981); *Garton v. City*

*of Reno,* 102 Nev. 313, 314–415, 720 P.2d 1227, 1228–1229 (1986).

**\*9** As explained more fully *supra,* Defendants had legal cause and justification to arrest Plaintiff. Accordingly, Plaintiff's claim that Defendants falsely imprisoned him also fails.

For the reasons set forth above, summary judgment on Plaintiff's Fourth Amendment unlawful search and seizure and false imprisonment claim and Plaintiff's conspiracy claim (Claim I) is ***GRANTED.***

### D. *Due Process (Claim II)*
Defendant asserts the conduct at issue in this claim pertains to events that occurred after Defendants transported Plaintiff to the Washoe County Jail; thus, Defendants assert Plaintiff has sued the wrong parties and this claim must be dismissed (Doc. # 49 at 6).

Plaintiff alleges his due process rights were violated because there was no probable cause affidavit to arrest signed by a magistrate and he was not arraigned within the "48 hours" required subsequent to his warrantless arrest (Doc. # 11 at 7). Plaintiff further alleges the preliminary hearing was also unduly delayed (*Id.*). Plaintiff essentially argues that Washoe County is not responsible for the delay because the County does not schedule criminal cases in the Reno Justice Court, "the Reno Justice Court does. Thus, describing the City of Reno." (*Id.*).

The Reno Justice Court is a department of Washoe County, not the City of Reno. To illustrate, Washoe County's webpage contains a link to the Reno Justice Court in which it explains:

> The [Reno Justice Court's] Criminal Division deals with cases which are being prosecuted by the Washoe County District Attorney's Office (or the State of Nevada Attorney General's Office in certain cases). All criminal proceedings in Reno Township, whether misdemeanor, gross misdemeanor or felony cases originate in Reno Justice Court. A preliminary examination is held in gross misdemeanor and felony cases

and, upon a finding of probable cause by the judge, the case is forwarded to the Second Judicial District Court for adjudication. Reno Justice Court is the trial court in misdemeanor cases.

See http://www.co.washoe.nv.us/rjc/whatisrjc.htm.

Plaintiff does not dispute that he was in the custody of Washoe County, and not the City of Reno, at the time the alleged due process violations occurred. Plaintiff mistakenly asserts the City of Reno did not provide him with due process. Plaintiff has provided no authority to support the assertion that the City of Reno is somehow responsible for any due process violations occurring while he is in the custody of Washoe County simply because its officers made the arrest. Accordingly, summary judgment on Plaintiff's due process claim (Claim II) is ***GRANTED.***

### E. *Cruel and Unusual Punishment (Claim III)*
Plaintiff asserts his third claim for relief under the Eighth and Fourteenth Amendments for cruel and unusual punishment (Doc. # 11 at 6). Defendant contends Plaintiff's claim is properly analyzed under the Fourteenth Amendment because Plaintiff was a pre-trial detainee (Doc. # 42 at 10). Both parties are incorrect.

**\*10** The Eighth Amendment applies only after a conviction. *See* 🛡 *Grinage v. Leyba,* 2008 WL 199720, —— F.Supp. —— (D.Nev.2008)(official citation not available). The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from the use of excessive force that amounts to punishment; however, this only occurs after the "seizure" or "arrest" ends and the "pretrial detention" begins. *Graham,* 490 U.S. at 395, n. 10; *see also* 🚩 *Bell v. Wolfish,* 441 U.S. 520, 535–539 (1979). Where a claim of excessive force arises in the context of an investigatory stop, arrest, or other "seizure" of a free citizen, the claim is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham,* 490 U.S. at 388; *see also* 🚩 *Reed v. Hoy,* 909 F.2d 324, 329 (9th Cir.1989).

Fourth Amendment claims for excessive force can be based on post-arrest police conduct; thus, a claim of the use of excessive force by an officer during transportation of an arrestee states a valid 🚩 § 1983 claim. 🚩 *Fontana v.*

*Haskin,* 262 F.3d 871, 878 (9th Cir.2001). Thus, under these facts, Plaintiff's third claim for relief is actually a Fourth Amendment claim for excessive force and the court will analyze said claim accordingly. [6]

Plaintiff alleges Defendants, "[i]n order to get Plaintiff to confess ... stuck Plaintiff in an old University of Nevada, Reno Police van which smelled like old feet, [and] was hot with no air conditioning or ventilation." (*Id.*). Plaintiff further alleges Officers Miller and Knight kept Plaintiff in the van for an extensive amount of time at the Reno Police Department during their shift change, stating the sooner Plaintiff told what happened, the sooner he would get to jail (*Id.*). Plaintiff then alleges, in route to jail, other officers sped up the freeway with a broken shock mount, and sped along corners and straightaways "wildly to torment Plaintiff as he protested his innocence and asked for air of some sort ..." (*Id.*).

Defendants contend Plaintiff was placed in the police van at approximately 11:07 p.m. and brought to the Reno Police Department at approximately 11:13 p.m. (Doc. # 42 at 11). Defendants further contend the shift change took approximately ten (10) minutes and Officer, Elges, Miller and Knight had no further interaction, communication or contact with Plaintiff (*Id.*). Defendants request the court take judicial notice of the temperature at the time of the arrest, which Defendants assert was only 66–68 degrees (Doc. # 42 at 11, Exh. D).

Plaintiff does not dispute that none of the named-Defendants drove Plaintiff to the jail from the Reno Police Department. Plaintiff contends the only facts in dispute are the length of time Plaintiff sat in the van during shift change (Doc. # 47 at 9). Plaintiff argues the temperature outside has no bearing on how hot it was in the van at the time of Plaintiff's arrest (Doc. # 47n at 9). Furthermore, Plaintiff speculates that Defendants may have informed the officers at the shift change to "toss him around in the back." (*Id.*).

**\*11** While the Ninth Circuit has not squarely addressed the issue of a post-arrest detention in a hot, unventilated police vehicle for an extended period of time, it appears said conduct can constitute excessive force under the Fourth Amendment. *See* 🔖*Fontana,* 262 F.3d at 878. Other Circuits are in agreement. For example, the Supreme Court held in *Hope v. Pelzer* that prison officials violated the Eighth Amendment by exposing a prisoner to the sun for seven hours while handcuffed to a hitching post, subjecting the prisoner to

thirst, taunting, and deprivation of bathroom breaks. 🔖*Hope v. Pelzer,* 536 U.S. 730, 738 (2002). Then, applying *Hope,* the Sixth Circuit found that a post-arrest detention in a police vehicle "with the windows rolled up in ninety degree heat for three hours constituted excessive force" under the Fourth Amendment. 🔖⚠️*Burchett v. Kiefer,* 310 F.3d 937, 945 (6th Cir.2002). The Fifth Circuit, on the other hand, found a post-arrest detention for approximately one-half hour in an unventilated police vehicle in the sun was not in violation of the Fourth Amendment. 🔖*Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir.2001). And a district court in New York found no Fourth Amendment violation where a suspect was left in police vehicle for ten minutes in a hot car but suffered no injuries. 🔖*Esmont v. City of New York,* 371 F.Supp.2d 202, 214 (S.D.N.Y.2005).

Here, Plaintiff has failed to name the officers who allegedly drove the van "wildly to torment Plaintiff." Thus, the only actions relevant to these named-Defendants are the drive from the apartment complex to the Reno Police Department for the shift change and the amount of time Plaintiff sat waiting in the van until the shift change occurred.

Defendants contend the total amount of time was approximately seventeen (17) minutes. While Plaintiff alleges he sat in the van for an "extensive amount of time", he has not stated what constitutes an excessive amount of time and has produced no evidence to dispute Defendants' assertion that the total time was approximately seventeen (17) minutes. Plaintiff simply alleges the length of time is in dispute (Doc. # 47 at 9). Furthermore, although Plaintiff alleges he suffered injury from the heat and further injury to his lower back, he has offered no evidence of any alleged injuries.

Viewing the evidence in the light most favorable to Plaintiff and drawing all inferences in his favor, even assuming Defendants made statements regarding leaving Plaintiff in the van until he talks, the evidence indicates Plaintiff was left in the van long enough for Defendants to change shifts, and was then transported to the jail. There is no evidence Plaintiff suffered any injuries on the way to the police station or while he waited in the van for the officers to affect a shift change. Under these facts, Defendants' conduct does not rise to the level of a Fourth Amendment violation. Accordingly, summary judgment on Plaintiff's excessive force claim, improperly pled as a cruel and unusual punishment claim, (Claim III) is ***GRANTED.***

**\*12** Because summary judgment is granted on each of Plaintiff's claims (Claims I, II, and III), the court need not reach Defendants' remaining arguments regarding official capacity, municipal liability, whether the Reno Police Department is an entity capable of being sued and qualified immunity.

### DEFENDANT CITY CENTER LIMITED PARTNERSHIP'S MOTION FOR SUMMARY JUDGMENT

Defendant City Center Limited Partnership (hereinafter "Defendant") moves for summary judgment on each of Plaintiff's claims asserting it is not a person "acting under color of state law" for § 1983 liability purposes, Plaintiff had failed to show a conspiracy between the night manager and the Defendant officers, and, in the event Plaintiff's conspiracy claim survives, there is no respondeat superior liability under § 1983 (Doc. # 51).

Plaintiff argues Defendant is a person acting under color of state law under § 1983; Plaintiff has sufficiently shown a conspiracy between the defendants; and Defendant is liable for the acts of the night manager because Defendant gave the manager the power and authority to act as its agent and respondeat superior liability is a basis for a § 1983 action under *Monell v. Dept. of Soc. Services of the City of New York,* 436 U.S. 658 (1978) on the basis of polices, practices, customs and procedures of an employer (Doc. # 55).

### Acting Under Color of State Law

Section 1983 actions may be brought to redress constitutional violations effected under color of state law. *Fonda v. Gray,* 707 F.2d 435, 437 (9th Cir.1983). "A civil rights plaintiff suing a private individual (or entity) under § 1983 must demonstrate that the private individual acted under color of state law; plaintiffs do not enjoy Fourteenth Amendment protections against 'private conduct abridging individual rights.' " *Franklin v. Fox,* 312 F.3d 423, 444 (9th Cir.2002) (citing *Burton v. Wilmington Park Auth.,* 365 U.S. 715, 722 (1961). "Section 1983 liability attaches only to individuals 'who carry badges of authority of a State

and represent it in some capacity.' " *Id.* (citing *Monroe v. Pape,* 365 U.S. 167, 172 (1961), *overruled in part by Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978)).

"In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action. This may occur ... sometimes if [the State] knowingly accepts the benefits derived from unconstitutional behavior." *Id.* (citing *Nat'l Collegiate Athletic Ass'n. v. Tarkanian,* 488 U.S. 179, 192 (1988). Constitutional standards should be invoked only "when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Id.* (citing *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n.,* 531 U.S. 288, 295 (2001) (internal quotations omitted) (emphasis in original)).

**\*13** "A private party may be considered to have acted under color of state law when it engages in a conspiracy or acts in concert with state agents to deprive one's constitutional rights." *Id.* (citing *United States v. Price,* 383 U.S. 787, 794 (1966); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970); *Stypmann v. City and County of San Francisco,* 557 F.2d 1338, 1341–42 (9th Cir.1977); *Briley v. California,* 564 F.2d 849, 858 (9th Cir.1977); *Rankin v. Howard,* 633 F.2d 844, 850 (9th Cir.1980), *cert. denied,* 451 U.S. 939 (1981)). There must be "significant" state involvement in the action for a private individual to have acted "under color of state law." *Howerton,* 708 F.2d at 382. Thus, to be liable as a co-conspirator, a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights. *Franklin,* 312 F.3d at 445. The Ninth Circuit has been careful to require a substantial degree of cooperation before imposing civil liability for actions by private individuals that impinge on civil rights. *Id.*

Defendant asserts it was not acting under color of state law; thus, summary judgment is appropriate as to all of Plaintiff's claims against it on this basis alone (Doc. # 51 at 6).

Plaintiff argues Defendant was acting under color of state law in the following ways: 1) the residential night manager used the State's authority to accuse Plaintiff of a crime, exercising powers of the state; 2) the residential night manager had

dual roles as security and manager, making administrative decisions on behalf of tenants and City Center; 3) the residential night manager has an obligation to protect its residents; and 4) the residential night manager provides a traditionally public function as the manager and the State has a substantial interest in protecting its citizens from false arrest, false imprisonment and malicious prosecution (Doc. # 55 at 5). Plaintiff's arguments are without merit for the reasons set forth below.

First and foremost, Plaintiff has failed to show any deprivation of his constitutional rights, as the Defendant officers had probable cause to arrest Plaintiff for felony domestic battery. Plaintiff has cited no authority to support his argument that Defendant acted under color of state law by reporting an alleged crime to the police and purportedly accusing Plaintiff of that crime. To the contrary, the Ninth Circuit has expressly held that "merely complaining to the police does not convert a private party into a state actor." *Collins v. Womancare,* 878 F.2d 1145, 1155 (9th Cir.1989); *see also* *Peng v. Penghu,* 335 F.3d 970 (9th Cir.2003); *Rivera v. Green,* 775 F.2d 1381, 1382–1384 (9th Cir.1985), *cert. denied,* 475 U.S. 1128 (1986); *Arnold v. IBM,* 637 F.2d 1350, 1357–1358 (9th Cir.1981); *Sykes v. State of California (Department of Motor Vehicles),* 497 F.2d 197, 202, n. 3 (9th Cir.1974). These holdings include the case where the defendant allegedly reports false allegations to the police. For instance, in *Peng,* the plaintiff sought to bring a § 1983 suit against his sister and her son based on allegations that they had given false statements to a deputy, which caused the plaintiff's arrest. *Id.* at 972. The district court dismissed the claims against the sister and her son because the plaintiff had not demonstrated that they were state actors, and the Ninth Circuit affirmed this dismissal. *Id.* at 980. Here, as in *Peng,* there is no evidence the Defendant officers knew Plaintiff was innocent of domestic battery; thus, a finding of concerted action cannot be found under these facts and Plaintiff has failed to show how the manager used the State's authority to accuse him of a crime. *Id.*

**\*14** Second, having dual roles as manager and security of the apartments does not convert the manager into a state actor for purposes of § 1983 liability and Plaintiff has provided no authority to support this argument.

Third, assuming the manager does have an obligation to protect its tenants, this obligation does not convert the manager into a state actor for purposes of § 1983 liability and Plaintiff has provided no authority to support this argument.

Finally, Plaintiff's argument—that the manager provides a traditionally public function and the state has a substantial interest in protecting its citizens from false arrest, false imprisonment and malicious prosecution, thereby, rendering Defendant's actions as those under color of state law—is without merit. It is undisputed that Defendant is a private business and not a governmental entity. "The fact that a private business holds itself open to the public cannot be determinative of the degree of state involvement in its activities. Indeed, the relevance of this fact is slight. Most service and retail businesses are open to the public, yet the government is not thought to be involved in their operation, let alone significantly." *Scott v. Eversole Mortuary,* 522 F.2d 1110, 1116 (9th Cir.1975). "[T]he fact that a business serves the public cannot transform private action with otherwise insignificant state involvement into action under color of state law." *Id.* Defendant officers merely responded to a report of a possible domestic dispute at Citi–Center Apartments. While the state furnishes services to private entities, including police protection, such protection does not transform Defendant's private action of reporting illegal conduct to the police into action under color of state law.

For the reasons set forth above, Plaintiff has failed to show Defendant acted under color of state law for purposes of § 1983 liability. Accordingly, summary judgment on Plaintiff's claims against Defendant City Center Limited Partnership is *GRANTED.*

Because summary judgment must be granted on this basis, the court need not consider Defendant's remaining arguments regarding conspiracy and respondeat superior liability under § 1983.

### *PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT/PLAINTIFF'S MOTION FOR JUDGMENT* [7]

Plaintiff seeks partial summary judgment on Claim I, requesting $300,000 as compensatory damages for unlawful incarceration and detainment, loss of employment and loss of residence (Doc. # 56 at 2–3). Plaintiff also requests $150,000

in punitive damages for the unlawful search and seizure, equal protection violation and due process violation (*Id.* at 6).

Defendants filed a motion to strike Plaintiff's motion for partial summary judgment and for sanctions on the sole basis that Plaintiff's motion was filed sixty (60) days after the deadline for filing dispositive motions as set forth in the court's Scheduling Order (Doc. # 58). Defendants then filed a motion for extension of time to respond to Plaintiff's motion for partial summary judgment on October 12, 2007 (Doc. # 59).

**\*15**  In his reply to Defendants' motion to strike and for sanctions, Plaintiff argues he did not know the dates of the Scheduling Order because, at this stage, no scheduling order exists as Plaintiff's last docket sheet of November 15, 2006 shows documents 19–23 mailed (Doc. # 61 at 2). Plaintiff further argues Defendants cannot receive sanctions in the form of attorney's fees from an inmate, unless his case is dismissed as frivolous or malicious (*Id.*). Finally, Plaintiff argues he is entitled to the relief requested because he proved his criminal case against him was dismissed due to lack of evidence and probable cause (*Id.* at 3). In his reply to Defendants' motion for extension of time to respond, Plaintiff argues no good cause was shown and Defendants' motion was used as unnecessary delay (Doc. # 62). Next, Plaintiff filed a Declaration of Entry of Default, asserting Defendants' failure to timely file their opposition entitles him to judgment as a matter of law (Doc. # 65 at 2). Plaintiff subsequently filed his Motion for Judgment requesting the same relief (Doc. # 68).

While under Local Rule 7–2, "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to a granting of the motion", the local rules do not require a court to automatically grant the motion and the failure to file an opposition is not dispositive of the motion itself. The court may consider the merits of the motion and does so here.

For the reasons set forth more fully *supra,* Plaintiff's claims, including Claim I, fail as a matter of law. Accordingly, Plaintiff's motion for partial summary judgment is **DENIED.** [8] Plaintiff's motion for judgment is also **DENIED.**

### *IV. CONCLUSION*

For the reasons set forth above, the court finds as follows:

1) Defendants' (City of Reno, Officers Elges, Miller and Knight) Motion for Summary Judgment (Doc. # 42) is **GRANTED**

2) Defendant City Center Limited Partnership's Motion for Summary Judgment (Doc. # 51) is **GRANTED.**

3) Plaintiff's Motion for Partial Summary Judgment (Doc. # 56) is **DENIED.**

4) Plaintiff's Motion for Judgment (Doc. # 68) is **DENIED.**

**LET JUDGMENT ENTER ACCORDINGLY.**

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 873085

---

## Footnotes

[1]  Plaintiff filed a second reply and opposition to Defendants' reply (Doc. # 50), to which Defendants filed a motion to strike (Doc. # 54) and Plaintiff replied (Doc. # 60). Pro se litigants are bound by the same rules of procedure as other litigants. *See* *Ghazali v. Moran,* 46 F.3d 52, 54 (9th Cir.1995) (citing *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir.1987)). The Federal Rules of Civil Procedure and the local rules of this court do not provide for second oppositions (essentially surreplies) as a matter of right and Plaintiff has not moved this court for, nor has the court granted, leave to file the aforementioned surreply. A surreply may only be filed by leave of court, *and only to address new matters raised in a reply to which a party would otherwise be unable to respond.* Accordingly, Defendants' motion to strike (Doc. # 54) is **GRANTED.** Plaintiff's second reply and opposition to Defendants' reply is hereby **STRICKEN.** No sanctions shall be awarded.

2   Plaintiff again filed a second reply and opposition (surreply) to Defendant's reply (Doc. # 63). Although Defendant did not file a motion to strike, for the same reasons set forth in note 1, Plaintiff's second reply is hereby ***STRICKEN.***

3   Plaintiff's first cause of action also includes a claim for conspiracy between all defendants (Doc. # 11 at 4–5).

4   Plaintiff asserts an "Equal Protection Clause to Due Process" claim. However, Plaintiff's complaint merely pleads a procedural due process violation rather than an equal protection violation (Doc. # 11 at 5).

5   The record indicates, at the time of the arrest, Plaintiff had two prior domestic violence arrests within the past seven (7) years (Doc. # 42, Exh. A). Under Nevada law, "the third and any subsequent offense within 7 years, is ... a category C felony and shall be punished as provided in NRS 193.130." NRS 200.485(1)(c).

6   Courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints. *Bernhardt v. Los Angeles County,* 339 F.3d 920 (9th Cir.2003). Thus, when a plaintiff proceeds pro se, the district court is required to afford him the benefit of the doubt in ascertaining what claims he raised in his complaint and argued to the district court. *Alvarez v. Hill,* 2008 WL 659570, —— F.3d ——, (9th Cir.2008) (official citation not available).

7   Plaintiff's motion for partial summary judgment and motion for judgment request the same relief.

8   Because Plaintiff's Motion for Partial Summary Judgment (Doc. # 56) is denied on the merits, Defendants' City of Reno, Officers Elges, Miller and Knight's Motion to Strike Plaintiff's Motion for Partial Summary Judgment and Request for Sanctions (Doc. # 58) is hereby ***DENIED AS MOOT.*** Defendants City of Reno, Officers Elges, Miller and Knight's Motion for Extension of Time to Respond to Plaintiff's Motion for Partial Summary Judgment (Doc. # 59) is also ***DENIED AS MOOT.***

---

**End of Document**                                  © 2024 Thomson Reuters. No claim to original U.S. Government Works.