1  Katherine F. Parks, Esq.
   Nevada Bar No. 6227
2  Thorndal Armstrong, PC
   6590 S. McCarran Blvd., Suite B
3  Reno, Nevada 89509
   Tel: (775) 786-2882
4  kfp@thorndal.com
   Attorney for Defendants
5  CARSON CITY, JASON BUENO, SEAN PALAMAR, TYSON LEAGUE,
   JASON WOODBURY, and KENNETH FURLONG
6

7                    UNITED STATES DISTRICT COURT

8                         DISTRICT OF NEVADA

9  DREW J. RIBAR,

10            Plaintiff,

11  vs.                                    Case No.      3:24-cv-00103-ART-CLB

12  STATE OF NEVADA EX. REL. NEVADA        **REPLY MEMORANDUM OF POINTS**
    DEPARTMENT OF CORRECTIONS,             **AND AUTHORITIES IN SUPPORT OF**
13  CARSON CITY AND ITS SHERIFFS           **DEFENDANTS' MOTION FOR**
    OFFICE, CARSON CITY DISTRICT           **SUMMARY JUDGMENT**
14  ATTORNEYS OFFICE, CARSON CITY
    MANAGERS OFFICE, FERNANDEIS
15  FRAZAIER IN HIS OFFICIAL CAPACITY
    AS WARDEN OF NORTHERN NEVADA
16  CORRECTIONAL, AARON RYDER IN HIS
    OFFICIAL CAPACITY AS AN OFFICER OF
17  NEVADA DEPARTMENT OF
    CORRECTIONS, ROBERT SMITH IN HIS
18  OFFICIAL CAPACITY AS AN OFFICER OF
    NEVADA DEPARTMENT OF
19  CORRECTIONS, JASON BUENO IN HIS
    OFFICIAL CAPACITY AS AN OFFICER OF
20  CARSON CITY SHERIFF, SEAN
    PALAMAR RYDER IN HIS OFFICIAL
21  CAPACITY AS AN OFFICER OF CARSON
    CITY SHERIFF, TYSON DARIN LEAGUE
22  RYDER IN HIS OFFICIAL CAPACITY AS
    AN OFFICER OF CARSON CITY DISTRICT
23  ATTORNEY, JAMES DZURENDA
    (DIRECTOR NEVADA DEPARTMENT OF
24  CORRECTIONS), JASON D. WOODBURY
    (CARSON CITY DISTRICT ATTORNEY),
25  KENNETH T. FURLONG IN HIS
    CAPACITY AS SHERIFF CARSON CITY,
26  NV, OFFICER/DEPUTY/J. DOE 1-99,

27
              Defendants.
28

                              - 1 -

1    COME NOW Defendants CARSON CITY, JASON BUENO, SEAN PALAMAR,

2  TYSON LEAGUE, JASON WOODBURY, and KENNETH FURLONG, by and through their

3  attorneys, Thorndal Armstrong, PC, and hereby submit their Reply Memorandum of Points and

4  Authorities in support of their Motion for Summary Judgment filed on October 9, 2024 [ECF

5  #29].  As is discussed herein, Plaintiff Drew Ribar offers no meaningful argument and no

6  evidence in opposition to the Defendants' motion.  Rather, Ribar cites to what he describes as

7  "newly provided evidence" in his opposition (relative only to his First Amendment claim against

8  the City) without submitting any such evidence to the Court and without having produced any

9  such evidence in this case.  In addition, Ribar fails to offer any argument or opposition on

10  numerous aspects of the Defendants' motion.  There are no genuine issues of material fact in this

11  case given that the events surrounding the arrest of Ribar on August 30, 2022, were recorded on

12  video by Ribar himself, and in body camera and dash camera video of the responding law

13  enforcement officers.  Based upon this undisputed evidence, summary judgment in favor of the

14  Defendants is warranted on all of the claims set forth in Ribar's Complaint.

**I**

**INTRODUCTION**

17    This case involves the arrest of Ribar on August 30, 2022, after the Carson City Sheriff's

18  Office received a call from officers with the Nevada Department of Corrections that Ribar was

19  trespassing and was disrupting operations at the Northern Nevada Correctional Center to such an

20  extent that the prison facility and surrounding areas had to be placed into lockdown.  This case is

21  decidedly *not* about Carson's City's attempt to somehow interfere with Ribar's First Amendment

22  rights.  While Ribar may characterize the case as such, Defendants have submitted undisputed

23  evidence to the Court which demonstrates that summary judgment should be entered in their

24  favor as to all claims brought against them.

25    Summary judgment is always proper "if the pleadings, depositions, answers to

26  interrogatories, and admissions on file, together with the affidavits, if any, show that there are no

27  genuine issues as to any material fact and the moving party is entitled to judgment as a matter of

28  law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505 (1986).  In this case,

the Defendants provided the Court with evidence in the form of videos which document the events of August 30, 2022, as well as sworn declarations and other admissible evidence in support of their motion.  Where a moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 249.

Ribar filed an opposition to the Defendants' motion on October 30, 2024, which failed to address numerous arguments presented by the Defendants and which was submitted to the Court without *any* evidence.  *See,* ECF #32.  In this regard, and in connection with Ribar's purported First Amendment claim, Ribar references "newly provided evidence" in the form of an email allegedly associated with an individual named William B. Moore who Ribar claims had a comment deleted from "an official Carson City social media post" which was critical of Deputy Jason Bueno.  Ribar also refers to information he claims to have received in September of 2022, which he describes as a "block list" of nine individuals whom Ribar claims are not permitted to post on an unidentified social media site related to the Carson City Sheriff's Office.  Ribar has not produced any such documents in this case and discovery closed on September 9, 2024.  Further, Ribar did not submit any of this alleged evidence with his opposition to the Defendants' dispositive motion.  Rather, Ribar's opposition consists entirely of conclusory allegations unsupported in the record.  The evidence submitted by the Defendants, which consists of uncontroverted video of the events in question, demonstrates, without question, that the Defendants are entitled to judgment in their favor as a matter of law pursuant to FRCP 56.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## II

## LEGAL ANALYSIS

**A.**   **RIBAR FAILED TO ADDRESS NUMEROUS OF THE ARGUMENTS SET FORTH IN DEFENDANTS' MOTION AND SUMMARY JUDGMENT SHOULD BE ENTERED AS TO ALL SUCH CLAIMS FOR RELIEF.**

**1.  Non-suable Entities Named in the Case Should be Dismissed.**

As set forth in Defendants' Motion for Summary Judgment, Ribar named a number of non-suable departments of Carson City in his Complaint, including the Carson City Sheriff's Office, the Carson City District Attorney's Office, and the Carson City Manager's Office.  All are departments of the political subdivision of Carson City and none are subject to suit.  *See, Scheider v. Elko County Sheriff's Dep't.,* 17 F. Supp.2d 1162, 1164 (D. Nev. 1988) and *Wayment v. Holmes,* 112 Nev. 232, 237-38, 912 P.2d 816 (Nev. 1996).  Ribar failed to offer any opposition to the Defendants' arguments in this regard and these non-suable entities should be dismissed on summary judgment.

**2.  Sheriff Ken Furlong and Carson City District Attorney Jason Woodbury Should be Dismissed on Summary Judgment.**

Ribar also failed to address the Defendants' arguments as to why Carson City Sheriff Ken Furlong and Carson City District Attorney Jason Woodbury are entitled to judgment in their favor as a matter of law.  As set forth in Defendants' motion, Ribar has wholly failed to allege that either Sheriff Furlong or District Attorney Woodbury were individually involved in the alleged violation of constitutional rights guaranteed by either the federal or state constitution.  In order to succeed on a claim based upon the alleged violation of constitutional rights, Ribar must show that each individual defendant was personally involved in the alleged constitutional deprivation at issue.  *See, Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1999).  Ribar has failed to offer any such evidence and did not present any arguments in opposition to the Defendants' motion in this regard.  Nor did Ribar offer any evidence in response to the Defendants' argument that District Attorney Woodbury would be entitled to absolute prosecutorial immunity even if there were any evidence of his personal participation in the events at issue.  Accordingly, Sheriff Furlong and Mr. Woodbury should be dismissed from the case on summary judgment.

**3. Deputy Sean Palamar Should be Dismissed on Summary Judgment.**

Ribar also failed to offer any evidence or argument with respect to that aspect of the Defendants' motion related to the dismissal of Ribar's claims against Deputy Sean Palamar based upon the towing of Ribar's vehicle following his arrest. As articulated in the Defendants' motion, Sean Palamar's involvement in the events at issue was primarily limited to calling a tow truck to have Ribar's vehicle removed from Snyder Avenue leading to the prison to a local tow yard following Ribar's arrest. *See,* ECF # 29, Exhibit 5. Defendants set forth a detailed analysis of why any claim premised upon an unlawful seizure of Ribar's vehicle based upon Deputy Palamar's actions is subject to dismissal as a matter of law. *See,* ECF #29, Section E. In requesting that Ribar's vehicle be towed from Snyder Avenue (an area designated as a no-parking zone by the Nevada Department of Corrections), Deputy Palamar was acting reasonably and in accordance with his community care-taking function. *See, Miranda v. City of Cornelius,* 429 F.3d 858, 862 (9th Cir. 2005). Parking along Snyder Avenue, a road leading to a medium security prison and prison grounds, is not permitted. *See,* ECF #29, Exhibit 5. At the time of his arrest, Ribar's vehicle was parked on Snyder Avenue. After speaking with NDOC officers, Deputy Palamar called a tow truck to have Ribar's vehicle removed from Snyder Avenue and taken to a local tow yard. *Id.* Under these circumstances, and in accord with applicable legal precedent, Deputy Palamar's actions did not amount to an unlawful seizure in violation of the Fourth Amendment.

Further, the law was not clearly established such that a reasonable officer in Deputy Palamar's position would have been on notice that his actions were unlawful. To constitute clearly established law, the particular rule at issue "must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Peck v. Montoya,* 51 F.4th 877, 887 (9th Cir. 2022).

Ribar does not even mention Deputy Palamar's name in his opposition to the Defendants' Motion for Summary Judgment nor does he offer any argument as to why Deputy Palamar is not entitled to dismissal from this case both on substantive grounds and under the doctrine of qualified immunity. Certainly, he provides no legal precedent suggesting that the law was

clearly established that the actions of Deputy Palamar in having Ribar's vehicle towed from the road leading to the prison (a no-parking zone) was in violation of the Fourth Amendment. Accordingly, Deputy Palamar is entitled to summary judgment in his favor and should be dismissed from the case as a matter of law.

### 4. Ribar Failed to Address or Oppose Defendants' Motion for Summary Judgment on Behalf of Defendant Tyson League and any Claims Based Upon Malicious Prosecution.

Ribar also failed to meaningfully address that aspect of the Defendants' motion seeking summary judgment of those claims brought against Carson City Deputy District Attorney Tyson League. The only mention Ribar makes regarding his malicious prosecution claim is to state that "the absence of a conviction satisfies the favorable termination" element of a malicious prosecution claim. *See,* ECF #32, p. 7, line 11. As was documented in the Defendants' motion, Ribar's case was dismissed after he completed the conditions of a deferred sentence following his no contest plea to trespassing. *See,* ECF # 29, Exhibit 7. Ribar's reference to one single element of a malicious prosecution claim (an element which is not part or parcel of the Defendants' arguments in their motion) does nothing to contradict the evidence and arguments set forth in the Defendants' motion as to the legal justification for dismissal of this claim.

In order to set forth a prima facie claim of malicious prosecution, whether premised on state or federal law, Ribar must show that a defendant instigated a criminal proceeding with improper purpose and without probable cause. Thus, Ribar must show that Mr. League prosecuted him with malice and without probable cause and that he did so for the purpose of denying him of a specific constitutional right. *See, McDonough v. Smith,* 588 U.S. 109, 116, 139 S. Ct. 2149 (2019).

That there was ample probable cause for the criminal charges brought against Ribar is detailed in Defendants' Motion for Summary Judgment. The video taken by the Ribar himself on August 30, 2022, clearly shows that Ribar was confronted repeatedly by officers with NDOC and advised to leave the prison property. Further, there was ample probable cause to prosecute Ribar for a violation of NRS 203.119 which relates to the commission of an act in the area of a public building which interferes with its activities. Based upon evidence obtained from Warden

1   Frazier Fernandeis (and other NDOC officers), Ribar was videotaping sensitive security areas at

2   the property, including fence lines, security measures, and private vehicles of prison staff parked

3   in the prison's parking lot.  *See,* ECF #29, Exhibit 1, ¶6.  Based upon the actions of Ribar, a

4   lockdown of the entire prison facility and surrounding areas was put into effect.  *Id.* at ¶5.  This

5   included moving hundreds of inmates and staff to secure locations and verifying that everyone

6   was accounted for and that the facility was secure.  *Id.*

7        Based upon these uncontroverted facts, it is plainly evident that the Carson City District

8   Attorney's Office had probable cause to commence the criminal prosecution at issue and Ribar

9   presents no evidence to contradict that submitted by the Defendants with their dispositive

10  motion.

11       Nor does Ribar offer any evidence or argument in opposition to Defendants' position that

12  Mr. League is entitled to summary judgment in his favor on absolute immunity grounds.  Acts

13  undertaken by a prosecutor in the course of his or her role as an advocate for the state are entitled

14  to the protections of absolute immunity.  *See, Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S. Ct.

15  2806 (1995).  No evidence has been offered by Ribar which would suggest (or even allege) that

16  Mr. League was acting outside of his role as an advocate for the state in connection with the

17  criminal prosecution of Ribar on charges stemming from his arrest on August 30, 2022.  Ribar

18  has offered no argument in opposition to the Defendants' position in this regard nor does he

19  address at all that aspect of the Defendants' motion in which they set forth the evidence and

20  justification for dismissal of Ribar's malicious prosecution claims.  Accordingly, these claims,

21  which appear to include malicious prosecution premised on both federal and state law, must be

22  dismissed and judgment entered in Defendants' favor as a matter of law, including in favor of

23  Mr. League, whose only connection to the events in questions is that he was the attorney with the

24  Carson City District Attorney's Office tasked with prosecuting the claims against Ribar.

25       **5. Inapplicable Constitutional Amendments and Criminal Statutes**

26       As set forth in Defendants' motion, Ribar references a number of constitutional

27  amendments which are simply inapplicable to the facts of this case, including the Fifth, Eighth

28  and Fourteenth Amendments, as well as identical provisions in the Nevada Constitution.  The

Fifth Amendment's Due Process protections apply to the federal government, not to States and state actors. *See, Bingue v. Prunchak,* 512 F.3d 1169, 1174 (9th Cir. 2008). The Eighth Amendment applies only after a conviction. *See, Graham v. Connor,* 490 U.S. 386, 393, fn. 6, 109 S. Ct. 1865 (1989). The Due Process clause of the Fourteenth Amendment protects pretrial detainees from the use of excessive force that amounts to punishment only after a seizure or arrest ends and pretrial detention begins. None of these constitutional amendments, nor identical provisions in the Nevada Constitution, apply to the facts and circumstances at issue in this case and Ribar failed to address any aspect of the Defendants' arguments in this regard.

Ribar also references numerous state statutes in a footnote appearing on every page of his Complaint. These include NRS 484B.653 (reckless driving), NRS 207.190 (coercion), NRS 200.310 (kidnapping), NRS 205.2715 (related to vehicles), NRS 197.200 (oppression) and NRS 205.220 (grand larceny). These criminal statutes provide no basis for tort liability against the Defendants and Ribar failed to address Defendants' arguments in this regard in his opposition. To the extent Ribar intended to seek damages against the Defendants based upon any of the aforementioned statutes, such claims should be dismissed and judgment entered in favor of the Defendants as a matter of law.

**B.    RIBAR'S CLAIMS BROUGHT AGAINST JASON BUENO SHOULD BE DISMISSED AND JUDGMENT ENTERED IN DEPUTY BUENO'S FAVOR AS A MATTER OF LAW.**

**1.  Alleged Wrongful Arrest**

Given Ribar's failure to address the lion's share of arguments raised by Defendants in their motion, the two discreet issues which remain to be addressed include only Ribar's Fourth Amendment claims against Jason Bueno and Ribar's First Amendment claim against Carson City. Ribar's Fourth Amendment claim consists of two elements. First, Ribar appears to claim that Deputy Bueno did not have sufficient probable cause to effect his arrest on August 30, 2022, and/or that Ribar was arrested by Deputy Bueno in retaliation for Ribar having allegedly engaged in First Amendment protected activity. Second, Ribar claims that Deputy Bueno violated the Fourth Amendment's prohibition on the use of excessive force with respect to Ribar's placement

in the back of his patrol vehicle following his arrest and for the short period of time it took

Deputy Bueno to transport Ribar from the scene of his arrest to the Carson City Jail.

With respect to the legality of Ribar's arrest, Ribar argues in his opposition that because, in his estimation, he had a right to videotape in the area in question by virtue of NRS 171.1233, Deputy Bueno lacked probable cause to arrest him. This argument is without merit and is not supported by the statute upon which Ribar largely bases his lawsuit.

NRS 171.1233 provides as follows:

> "1. A person who is not under arrest or in the custody of a peace officer may record a law enforcement activity and maintain custody and control of that recording and any property or instruments used by the person to record law enforcement activity. A person who is under arrest or in the custody of a peace officer does not, by that status alone, forfeit the right to have any such recordings, property or instruments maintained and returned to him or her. **This subsection must not be construed to authorize a person to engage in actions that interfere with or obstruct a law enforcement activity or otherwise violate any other law in an effort to record a law enforcement activity.**"

*See,* NRS 171.1233(1)(emphasis added). "Law enforcement activity" is defined under the statute as "any activity by a peace officer acting under the color of law." *Id.* at 171.1233(3)(a).

In his opposition, Ribar contends that, based upon this statute, the NDOC officers had no right to order that he cease filming areas of the prison and that Deputy Bueno had "no lawful basis" on which to arrest him for filming areas of the prison. The express language of the statute contradicts Ribar's position in this regard, as the statute does not permit a person to engage in carte blanche recording of "law enforcement activities" where such actions interfere with or obstruct law enforcement activities. As set forth in Defendants' Motion for Summary Judgment, when Deputy Bueno arrived on scene after being dispatched to the area at the request of NDOC officers, Sgt Robert Smith of NDOC informed him that Ribar was parked on the prison road and was filming in restricted areas.[1] *See,* ECF #29, Exhibit 1, ¶4. Sgt. Smith further informed Deputy Bueno that the area in which Ribar was walking and filming was restricted State property and that he was not authorized to either remain on the property or continue his activities. *Id.* Ribar was not only filming fence lines and security measures at the prison, he was filming

---

[1] It is highly questionable whether Ribar's actions in filming fence lines and other security measures of the prison, along with private vehicles of prison staff members, even constitutes filming of "law enforcement activities" within the meaning of NRS 171.1233.

private vehicles of staff members parked in the prison's parking lot. *Id.* As a result of the actions of Ribar, and the security risks he posed, Sgt. Smith ordered a lockdown of the entire prison facility and surrounding area. *Id.* at ¶5. This included moving hundreds of inmates and staff to secure locations and verifying that everyone was accounted for and that the facility was secure. *Id.* This evidence regarding the interference caused by Ribar with the operation of the prison is uncontested in this case. Ribar offers nothing to counter it in his opposition other than the wholly conclusory statement that he had a "right to record law enforcement activities in this public area." Ribar's conduct resulted in a lockdown of the entire prison and surrounding areas. NRS 171.1233 does not permit actions such as those taken by Ribar on August 30, 2022, nor does it provide any support for Ribar's claim that Deputy Bueno lacked probable cause for his arrest on grounds that Ribar was exercising First Amendment rights he premises upon the statute at issue.

Deputy Bueno had more than sufficient probable cause to arrest Ribar for trespassing, obstructing a public officer, and disturbing the peace. Under the Fourth Amendment, a warrantless arrest requires probable cause. *See, U.S. v. Lopez,* 482 F.3d 1067, 1072 (9th Cir. 2007). A law enforcement officer is privileged to make an arrest where probable cause exists. Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a prudent person of reasonable caution in the belief that an offense has been committed by the person to be arrested. *See, Gasho v. United States,* 39 F.3d 1420, 1427 (9th Cir. 1994); *see also, Beck v. Ohio,* 379 U.S. 89, 91, 85 S. Ct. 223 (1964). "Probable cause is an objective standard" and an arresting officer's subjective intention is immaterial to the analysis of reasonableness. *Lopez, supra.* at 1072. Probable cause to arrest does not require awareness of a particular crime, only that some crime may have been committed. *See, Illinois v. Gates,* 462 U.S. 213, 243, fn 13, 103 S. Ct. 2317 (1983). Even where a law enforcement officer is not aware of all of the underlying facts that provided probable cause for arrest, he or she may nonetheless act reasonably in relying on information received by other law enforcement officials. *See, Kayo v. Mertz,* 531 F. Supp.3d 774, 795 (S.D. N.Y. 2021); *see*

*also, United States v. Colon*, 250 F.3d 130, 135 (2nd Cir. 2001).  In a §1983 false arrest case, the burden of establishing the absence of probable cause rests on the plaintiff.  *Kayo, supra.* at 789.

NRS 207.200 pertaining to the criminal offense of trespassing, provides that a person who . . . willfully goes or remains upon any land or in any building after having been warned during the previous 24 months by the owner or occupant thereof not to trespass is guilty of a misdemeanor.  *See,* NRS 207.200(1)(b).  After he arrived on scene, Deputy Bueno was advised by Sgt. Smith and Warden Fernandeis, both sworn law enforcement officers, that Ribar had committed the offense of trespass in that he had been asked multiple times to leave the property and had refused.  *See,* ECF #29, Exhibit 2.  Ribar's own video taken on the day of the incident clearly documents the multiple times NDOC officers instructed Ribar to leave the property and the multiple times Ribar refused.  Thus, there was more than sufficient probable cause for Ribar's arrest on charges of trespass on August 30, 2022.

Deputy Bueno also had probable cause to arrest Ribar for a violation of NRS 203.119, which provides that a person "shall not commit any act in a public building or on the public grounds surrounding the building which interferes with the peaceful conduct of activities normally carried on in the building or on the grounds."  *See,* NRS 203.119(1).  The statute further provides that a person who refuses to leave any public building or grounds under such circumstances upon request by the proper official is guilty of a misdemeanor.  *See,* NRS 203.119(2).  "Public building" under the statute includes any building owned by the State of Nevada and used for any public purpose.  *See,* NRS 203.119(4)(b)(2).  Deputy Bueno was informed that, as a result of Ribar's actions in remaining on prison grounds and in filming security measures and fence lines around the facility, NNCC had to initiate a lockdown of the entire facility and surrounding areas.  *See,* ECF # 29, Exhibit 1, ¶5.  As such, Deputy Bueno had ample probable cause to arrest Ribar for obstructing the operations of the prison.

Ribar's conclusory allegation that Deputy Bueno lacked legal cause to arrest him based upon NRS 171.1233 is not supported by the undisputed facts of this case, the language of the statute itself, or any case law or legal argument identified by Ribar in his opposition.  The existence of probable cause is fatal to Ribar's claim of wrongful arrest and Deputy Bueno is

1    entitled to judgment in his favor as a matter of law.  The same analysis is applied to Ribar's state

2    tort claim for false imprisonment and the existence of probable cause for Ribar's arrest warrants

3    the dismissal of same on summary judgment.  *See, Marschall v. City of Carson,* 86 Nev. 110,

4    112, 464 P.2d 494 (Nev. 1970).

5            Even if Deputy Bueno were not entitled to judgment in his favor of Ribar's Fourth

6    Amendment wrongful arrest claim on substantive grounds, the doctrine of qualified immunity

7    provides separate grounds for judgment in his favor as a matter of law.  A government official is

8    entitled to qualified immunity from a claim of damages unless the plaintiff raises a genuine issue

9    of material fact showing (1) a violation of a constitutional right and (2) that the right was clearly

10   established at the time of the alleged misconduct.  *See, Evans v. Skolnik*, 997 F.3d 1060, 1064

11   (9th Cir. 2021); citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808 (2009).  A

12   government official violates clearly established law when, at the time of the challenged conduct,

13   the contours of the right are sufficiently clear that every reasonable official would have

14   understood that what he or she was doing violates that right.  *Evans, supra.* at 1066.  "Although

15   the Supreme Court 'does not require a case directly on point for a right to be clearly established,

16   existing precedent must have placed the statutory or constitutional question beyond debate.'"  *Id;*

17   *citing Kisela v. Hughes,* 584 U.S. 100, 138 S. Ct. 1148, 1152 (2018).  "This demanding standard

18   protects all but the plainly incompetent or those who knowingly violate the law."  *District of*

19   *Columbia v. Wesby,* 583 U.S. 48, 138 S. Ct. 577, 589 (2018).

20           Ribar's argument that Deputy Bueno is not entitled to the protection of qualified

21   immunity in this case is based exclusively on NRS 171.1233.  Ribar argues in this regard that he

22   was "legally entitled" to engage in the conduct at issue pursuant to NRS 171.1233 and that, as a

23   result, qualified immunity does not apply.  This argument is without merit based upon the

24   express language of the statute upon which Ribar so heavily relies.  As discussed above, NRS

25   171.1233 does provide members of the public with certain rights to record "law enforcement

26   activities."  *See,* NRS 171.1233(1).  However, the statute makes abundantly clear, and

27   specifically states, that a person does not have a right to engage in conduct that interferes with, or

28   obstructs, a law enforcement officer in his or her duties.  Here, it is undisputed that Sgt. Smith

1    and Warden Fernandeis informed Deputy Bueno that Ribar's actions in filming fence lines and

2    other security measures caused a severe interruption in prison operations to the extent that the

3    prison and surrounding areas were ordered into lockdown.  Given the plain language of NRS

4    171.1233(1), it would not have been clear to a reasonable officer on scene that Ribar's alleged

5    right to record "law enforcement activities" somehow precluded Ribar's arrest for trespass and

6    obstruction under these circumstances.  Nor is there any other legal precedent which would have

7    placed Deputy Bueno on notice that his actions in arresting Ribar for the offenses described

8    herein would have been, or was, a violation of the Fourth Amendment.  Accordingly, Deputy

9    Bueno is entitled to summary judgment of Ribar's Fourth Amendment wrongful arrest claim on

10   qualified immunity grounds.

11          Although Ribar failed to address the issue in his opposition to the Defendants' motion,

12   there is also no evidence to support any claim that Deputy Bueno's arrest of Ribar was done in

13   retaliation for Ribar having exercised any rights protected by the First Amendment.  First, the

14   existence of probable cause for Ribar's arrest is fatal to his claim premised on First Amendment

15   retaliation.  *See, Nieves v. Bartlett,* 547 U.S. 250, 256, 126 S. Ct. 1695 (2019).  Second, there is

16   no evidence whatsoever which demonstrates that Ribar's alleged speech (his claim that he had a

17   right to film activities at the NNCC) played any part in Deputy Bueno's actions in taking Ribar

18   into custody.  Deputy Bueno was dispatched to the NNCC in response to the State's call for

19   assistance with a trespass incident.  Deputy Bueno had no information as to the reasons why

20   Ribar was present on prison property or why he was filming areas of the prison, including

21   security measures and prison fence line.[2]  He was simply responding to a property owner's

22   request, here the State, to remove a person from property who was trespassing and causing the

23   interruption of operations at the prison.  Ribar simply cannot demonstrate a causal connection

24

25   _____

26   [2]In other words, Deputy Bueno had no knowledge or information at the time he was dispatched
     to the prison, or at the time of Ribar's arrest, as to what "viewpoint" Ribar may have been
27   espousing.  As such, there is not, and will never be, any evidence to suggest that Deputy Bueno's
     actions on August 30, 2022, were somehow motivated by his desire to censor any "viewpoint"
28   Plaintiff may have had or that his actions were somehow motivated by any First Amendment
     protected activity in which Plaintiff may claim to have been engaged.

1    between his arrest and the activities in which he was engaged prior to Deputy Bueno's arrival on

2    scene.

3    Based upon all of the foregoing, Ribar's Fourth Amendment claim for wrongful arrest,

4    his state tort claim for false imprisonment, and any identical claim premised upon Article 1, ¶18

5    of the Nevada Constitution must be dismissed and judgment entered in favor of Deputy Bueno as

6    a matter of law.

7    **2.  Alleged Excessive Force**

8    As for any claim premised upon Deputy Bueno's actions in placing Ribar in the back of

9    his patrol vehicle for a short period of time after his arrest and through transport of Ribar to the

10    Carson City Jail (what Plaintiff refers to as "hot boxing"), there is simply no evidence, nor has

11    Ribar offered any, which would even remotely suggest a violation of the Fourth Amendment

12    under the circumstances.

13    A claim for the alleged use of excessive force by an officer during transportation of an

14    arrestee is analyzed under the Fourth Amendment's objective reasonableness standard.  *See,*

15    *Fontana v. Haskin,* 262 F.3d 871, 878 (9th Cir. 2001).  Although unnecessary exposure to heat

16    may constitute a constitutional violation, being briefly detained in uncomfortable conditions such

17    as a hot patrol car does not amount to a constitutional violation.  *See, Arias v. Amador,* 61

18    F.Supp.3d 960, 976 (E.D. Cal. 2014).

19    There are no questions of material fact in this case which would support Ribar's claim

20    that he was subjected to excessive force based upon the conditions present in Deputy Bueno's

21    patrol vehicle on August 30, 2022.  First, all of the events in question are contained on the body

22    camera video and dash cam video submitted to the Court by the Defendants with their motion.

23    Contrary to Ribar's wholly conclusory allegations to the contrary, Deputy Bueno's body worn

24    camera video shows that the rear passenger side window of his patrol vehicle was open for the

25    majority of the time after Ribar was placed in the vehicle.  *See,* ECF #29, Exhibit 2.  Despite any

26    attempted argument by Ribar to the contrary, Ribar can clearly be heard talking to the law

27    enforcement officers on scene through the open window while he was seated in the vehicle.  *Id.*

28    Ribar can be observed for the entire period of time he was seated in Deputy Bueno's vehicle, a

total of only 27 minutes, and at no time does he appear to be in distress or uncomfortable.  *See,* ECF # 29, Exhibit 3.  The vehicle was running for the entire period of time Ribar was in the vehicle and the air conditioning was on.  *See,* ECF #29, Exhibit 1, ¶12; *see also,* ECF #29, Exhibit 2.  That the air conditioning was running is readily observable from the video submitted by the Defendants with their motion.  *See,* ECF #29, Exhibit 2.  Air flow was provided to the back seat of Deputy Bueno's vehicle at all times while Ribar was seated in same (and Ribar cannot possibly, and does not, have personal knowledge contrary to this evidence).  *See,* ECF #29, Exhibit 1, ¶12.  Ribar was alone in Deputy Bueno's vehicle for only 14 minutes before Deputy Bueno transported him from the scene of his arrest to the Carson City Jail.  Thereafter, Ribar spent 13 minutes inside Deputy Bueno's vehicle during the ride to the Jail and his removal from the vehicle.

Ribar's opposition to the Defendants' arguments in this regard consists of nothing more than his claim that the temperature in Deputy Bueno's vehicle caused him "discomfort" and caused him to sweat.  While the body camera video does not, in fact, support Ribar's claim that he became "soaked in sweat," this conclusory allegation does not support any claim that Ribar suffered injury of any kind during the brief period of time he spent in the backseat of Deputy Bueno's patrol vehicle.  Based upon the undisputed facts as set forth in the video provided by the Defendants to the Court, this case is akin to those in which the Courts have found no constitutional violation as related to confinement of an individual in a patrol vehicle.  *See, Arias, supra.* at 976 (post-arrest detention for approximately 15 minutes in "very hot" police car in which the window was rolled down about 4 inches was not a violation of the Fourth Amendment); *Estmon v. City of New York,* 371 S. Supp.2d 202, 214 (S.D.N.Y. 2005)(finding no Fourth Amendment violation where the plaintiff was held in a hot police car for ten minutes without injury); *Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir. 2001)(finding no Fourth Amendment violation where the plaintiff was left in an unventilated vehicle in the sun for approximately 30 minutes); *Kanvick v. City of Reno,* 2008 WL 873085 (D. Nev. 2008)(no Fourth Amendment violation where the plaintiff was placed in allegedly hot patrol vehicle for

1    approximately 17 minutes and offered no evidence of any alleged injuries).[3] Cf. *Kassab v. San*

2    *Diego Police Dep't.,* 453 F. App'x 747, 748 (9th Cir. 2011)(plaintiff made out an colorable

3    Fourth Amendment violation where plaintiff had been detained in police car for more than four

4    hours with the window rolled up, no air conditioning, and an interior temperature of 115 degrees

5    with evidence that the plaintiff suffered from heat stroke, had difficulty breathing and almost

6    passed out several times).

7            The only other argument offered by Ribar on the subject of his excessive force claim

8    (aside from his argument that the temperature in the rear of the patrol vehicle made him sweat) is

9    his new reference (one that does not appear in his Complaint) that he was not wearing a seatbelt

10   while seated in the back of Deputy Bueno's vehicle.  Ribar offers no evidence as to how this

11   alleged fact caused him any injury nor does he reference a single case in which the Courts have

12   held that such conduct (even if true) constitutes excessive force under the Fourth Amendment.

13          The evidence in the form of the video submitted by the Defendants with their Motion for

14   Summary Judgment is undisputed and it clearly demonstrates that Ribar was not subjected to

15   excessive force by Deputy Bueno on August 30, 2022.  Even if one could conceivably find a

16   Fourth Amendment violation under the circumstances, Deputy Bueno would be, and is, entitled

17   to summary judgment based on qualified immunity.  It simply cannot be said that it was clearly

18   established law in the Ninth Circuit (or elsewhere) that Deputy Bueno's actions in placing Ribar

19   in the back of his patrol vehicle for 27 minutes while he completed his investigation and drove

20   Ribar to the Carson City Jail constituted excessive force under the Fourth Amendment, as there

21   is no legal precedent which would have placed Deputy Bueno on notice that his actions were in

22   any way unlawful.  Ribar's claim that qualified immunity somehow does not apply in this case

23   based upon his conclusory statement that Deputy Bueno's actions were motivated by "viewpoint

24   discrimination" is wholly lacking in both factual and legal support.  Deputy Bueno is entitled to

25   judgment in his favor as a matter of law because he committed no constitutional violation and the

26   law was not clearly established that conduct similar to that at issue would have constituted a

27   constitutional violation.

28

---

[3]*See,* ECF # 29, Exhibit 8, *Kanvick v. City of Reno,* Case No. 3:06-cv-00058-RAM.

1     To the extent Ribar claims to rely upon the Nevada Constitution with respect to his

2  placement in Deputy Bueno's vehicle following his arrest, the language of Article 1, §18 relating

3  to unlawful search and seizure is identical to the Fourth Amendment of the United States

4  Constitution and is subject to dismissal on the same grounds.

5  **C.    ANY CLAIM PREMISED UPON THE FIRST AMENDMENT SHOULD BE
       DISMISSED AND JUDGMENT ENTERED IN FAVOR OF THE DEFENDANTS AS**

6  **A MATTER OF LAW.**

7     Aside from the Fourth Amendment allegations brought against Deputy Bueno, the only

8  other claim Ribar addresses in any meaningful way in his opposition is his First Amendment

9  claim of alleged "viewpoint discrimination" premised upon the (wholly conclusory) allegation

10  that Carson City deleted a comment he made on social media.  Ribar offers *no evidence,*

11  admissible or otherwise, to support such a claim.  Rather, Ribar mentions the actions of Carson

12  City in allegedly deleting a social media post of another individual, identified as William B.

13  Moore, and claims, without any evidence, that Carson City maintains a "block list" of

14  unidentified persons whom Ribar claims are not permitted to post things on unidentified social

15  media accounts.  In his opposition, Ribar describes this information as "newly provided

16  evidence," yet he references receipt of this alleged evidence in September of 2022.  Ribar has

17  provided no such evidence to the Court in opposition to the Defendants' motion and Ribar has

18  produced no such evidence in this case (despite the fact that discovery closed on September 9,

19  2024).  Ribar has offered no evidence to the Court or to the Defendants which in any way

20  supports a claim against the City for violation of his First Amendment rights.

21     As is true of his Complaint, Ribar has identified no individual associated with Carson

22  City who was allegedly involved in any violation of his First Amendment rights as related to

23  social media accounts in his opposition to the Defendants' motion.  As such, Ribar must

24  demonstrate that Carson City had in place a policy, practice or custom which was the moving

25  force behind the violation of *his* constitutional rights.  *See, Monell v. Dep't. of Soc. Servs.,* 436

26  U.S. 658, 694, 98 S. Ct. 2018 (1978).  In order to establish liability for government entities under

27  §1983, a plaintiff must prove (1) that the plaintiff possessed a constitutional right of which he or

28  she was deprived; (2) that the municipality had a policy; (3) that the policy amounts to deliberate

1   indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force

2   behind the constitutional violation.  *See, Dougherty v. City of Covina,* 654 F.3d 892, 900 (9th Cir.

3   2011).  Proof of a single instance of unconstitutional activity is not sufficient to impose civil

4   rights liability on a government entity unless proof of the incident includes proof that it was

5   caused by an existing, unconstitutional municipal policy which can be attributed to a final

6   policy-making official.  An isolated or sporadic incident cannot form the basis of *Monell* liability

7   for an improper custom or practice.  *See, Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996).

8           Ribar has offered no evidence in support of a First Amendment claim against the City.

9   Ribar references the alleged violation of rights of other individuals without providing any

10  evidence whatsoever to prove his conclusory allegations and Ribar has produced no such

11  evidence in this case, despite his claim to having been in possession of same for more than two

12  years.  Ribar's conclusory allegations regarding an alleged violation of his First Amendment

13  rights based on issues related to unidentified social media accounts maintained by the City is

14  insufficient as a matter of law and Ribar cannot avoid summary judgment of a *Monell* claim

15  against the City by resting on such conclusory statements.  There is simply no evidence in this

16  case which supports Plaintiff's allegation that an unlawful custom, policy or practice exists or

17  existed in Carson City which was the moving force behind a violation of his First Amendment

18  rights.  Accordingly, summary judgment must be entered in favor of Carson City as to Ribar's

19  First Amendment claim based upon his allegation that he was prevented from posting on any

20  (unidentified) City social media accounts.

21  **D.      RIBAR'S CONTENTION THAT THE "FAILURE" OF THE STATE
            DEFENDANTS TO HAVE APPEARED IN THE CASE WARRANTS DENIAL OF
22          THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS WITHOUT
            MERIT.**
23

24          Lastly, Ribar's claim that the absence of an appearance by the State of Nevada

25  defendants in the case warrants denial of the Defendants' motion is specious and should be

26  summarily rejected.  The moving Defendants do not know why the State defendants have not

27  made an appearance in the case and it is Ribar's burden to have taken appropriate action to have

28  secured their appearance in the event they were properly served with the summons and

complaint.  The Court entered a scheduling order on April 26, 2024.  *See,* ECF # 13.  Under the Court's scheduling order, the deadline for filing dispositive motions was set for October 9, 2024. *Id.*  Operating under the Court's scheduling order, the Defendants filed their Motion for Summary Judgment within the Court's deadline.  The fact that Ribar has failed to make efforts to secure the appearance of the State defendants is immaterial to the issues raised in the Defendants' motion.

Further, Ribar's claim that the granting of Defendants' motion could result in "fragmented judgments" in cases involving "jointly liable parties" misapprehends the law. Simply put, the State cannot be held "jointly liable" for the conduct of any Carson City Defendants and the City cannot be held "jointly liable" for the conduct of any State of Nevada Defendants.  To the extent Ribar failed to take any action to bring the State defendants into the case prior to the close of discovery and the dispositive motion deadline, he did so to his detriment and this failure has nothing whatsoever to do with the moving Defendants' summary judgment motion.

**III**

**CONCLUSION**

The existence of video of the entire events of August 30, 2022, upon which Ribar bases his claims in this case demonstrates the absence of any genuine issues of material fact for trial. Ribar largely fails to address the evidence and legal arguments made by the Defendants in their Motion for Summary Judgment.  With respect to the claims Ribar does mention in his opposition, he provides no evidence, admissible or otherwise, which supports his claims in this case.  There are no genuine issues of material fact and the Defendants are entitled to judgment in

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

their favor as a matter of law.  Accordingly, the Defendants respectfully request that Ribar's Complaint be dismissed and that judgment be entered in their favor as a matter of law pursuant to FRCP 56.

DATED this 13th day of November, 2024.

THORNDAL ARMSTRONG, PC

By:    /s/ Katherine Parks
          KATHERINE F. PARKS, ESQ.
          Nevada Bar No. 6227
          6590 S. McCarran Blvd., Suite B
          Reno, Nevada 89509
          Attorney for Defendants
          CARSON CITY, JASON BUENO, SEAN
          PALAMAR, TYSON LEAGUE, JASON
          WOODBURY, and KENNETH FURLONG

- 20 -

## **CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of Thorndal Armstrong, PC, and that on this date I caused the foregoing REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT to be served on all parties to this action by:

  _X_   placing an original or true copy thereof in a sealed, postage prepaid, envelope in the United States mail at Reno, Nevada.

_____  United States District Court CM/ECF Electronic Filing Process

_____  hand delivery

_____  electronic means (fax, electronic mail, etc.)

_____  Federal Express/UPS or other overnight delivery

fully addressed as follows:

Drew J. Ribar
3480 Pershing Ln
Washoe Valley, NV  89704
Pro Se Ribar

DATED this 13th day of November, 2024.

_____/s/ Laura Bautista_____
An employee of Thorndal Armstrong, PC

- 21 -